AUGUSTA G. GENET, Respondent, v. THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellant.

|       |       |
|-------|-------|
| 163   | 173   |
| s167  | 608   |
| 163   | 173   |
| s170  | 279   |
| s170  | 284   |
| s170  | 292   |
| s170  | 293   |
| 171   | 2128  |
| 163   | 173   |
| e 75 AD1378 |  |

1. APPEAL — FINDING AS TO FOREIGN LAW — UNANIMOUS AFFIRMANCE BY APPELLATE DIVISION. A referee's finding as to the law of another state, when unanimously affirmed by the Appellate Division, cannot be reviewed by the Court of Appeals, since it is a finding of fact.

2. JUDGMENT OF DISMISSAL — EFFECT OF, AS AN ESTOPPEL. A judgment dismissing a complaint without determining the merits cannot be conclusive in litigations between the parties as to other causes of action, since by section 1209 of the Code of Civil Procedure it is not conclusive between the parties in a new suit brought for the same cause of action.

3. CONTRACT — CONSTRUCTION OF AGREEMENT FOR MINING COAL. A lease of all the coal contained in, on or under certain lands, and providing that the lessee should pay a certain sum for every ton of "clean, merchantable coal, exclusive of culm or mine waste, that will pass through a mesh of a half-inch square," coal that would pass through such mesh being at that time of little or no value, and defining "merchantable coal" to be all coal of as good quality as the average of coal taken from other mines and sent to market by the lessee, and also containing various provisions by which, in the contingencies of mining being unprofitable, coal being unmerchantable, or faults in the mine being met with, the lessee should be relieved from its obligation to mine the coal, cannot be construed to give the lessee the right to all the coal which will pass through a mesh of a half-inch square without any payment therefor, or, on the other hand, to require the lessee to pay full value for such coal without regard to the rate fixed by the lease, but does require the lessee, in case it chose to take such coal, to pay for it at the rate required to be paid for the other coal.

*Genet* v. *D. & H. C. Co.*, 14 App. Div. 177, modified.

(Argued April 4, 1900; decided May 15, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 11, 1897, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank E. Smith* and *David Willcox* for appellant. The so-called lease of March, 1864, is a conveyance in fee of the

coal in place as land, and not a mere executory contract as found by the referee. (*Genet* v. *D. & H. C. Co.*, 122 N. Y. 505; 136 N. Y. 593; *Caldwell* v. *Fulton*, 31 Penn. St. 475; *Miles* v. *D. & H. C. Co.*, 140 Penn. St. 623; *Lillibridge* v. *L. C. Co.*, 143 Penn. St. 293; *Vail* v. *L. I. R. R. Co.*, 106 N. Y. 283; *Edwards* v. *McClurg*, 39 Ohio St. 41; *Caldwell* v. *Copeland*, 37 Penn. St. 427; *Armstrong* v. *Caldwell*, 53 Penn. St. 284; *Harlan* v. *L. C. & N. Co.*, 35 Penn. St. 287.) The so-called lease, when properly construed, being a conveyance of the coal in fee, defendant has incurred no liability by taking the small coal. (*Romeyn* v. *Sickles*, 108 N. Y. 650; *Terry* v. *Munger*, 121 N. Y. 161; 1 Chitty on Pleading, 503; 3 Chitty on Pleading, 1098.) Assuming the lease to be merely an executory contract for the mining of the coal, the judgment appealed from is still erroneous, as defendant has the right, even in that view of it, to mine and take the small coal. (*Lance* v. *L. & W. C. Co.*, 163 Penn. St. 84.) The measure of damages adopted by the referee is erroneous. (*Jegon* v. *Vivian*, L. R. [6 Ch. App.] 742; *Whitney* v. *Huntington*, 37 Minn. 197; *King* v. *Merriman*, 38 Minn. 47; *Baker* v. *Drake*, 53 N. Y. 211; *U. S. T. Co.* v. *O'Brien*, 143 N. Y. 284; *Livingstone* v. *R. C. Co.*, L. R. [5 App. Cas.] 25; *De Camp* v. *Bullard*, 159 N. Y. 450; *Hilton* v. *Woods*, L. R. [4 Eq.] 432; *U. M. Collieries Co. Case*, L. R. [15 Eq.] 46.)

*George C. Genet* for respondent. Coal in place on land is a part of the land and may be sold or leased to be mined and removed and paid for by the ton, after it is taken out and cleaned. In such case the subject of the sale ceases to be a part of the land and becomes a chattel, and the rights of the parties depend on the contract alone. (*Douglas* v. *Shumway*, 13 Gray, 502; *Claflin* v. *Carpenter*, 4 Metc. 580; *Smith* v. *Surinam*, 9 B. & C. 561; *Marshal* v. *Green*, L. R. [1 C. P. Div.] 35; *U. P. Co.* v. *B. P. Co.*, 72 Penn. St. 173; *Mumford* v. *Whitney*, 15 Wend. 380; 4 Metc. 580; 8 Metc. 34; 4 Metc. 372; 11 Allen, 141; 7 Green, 447; 13 B.

Mon. 340; *Smith* v. *Benson*, 1 Hill, 176; Am. Lead. Cas. [1st Am. ed.] 739–752; Sugden on Vendors [Perkins' ed.], 125, 126.) The finding of the referee, that the writing in question is an executory contract and not a conveyance in fee, is based upon a question of fact and is fully supported by the evidence. (*Jennings Bros.* v. *Beall*, 158 Penn. St. 283; *Griffen* v. *Fellows*, 81 Penn. St. 114; *Genet* v. *D. & H. C. Co.*, 136 N. Y. 594; *L. & W. C. Co.* v. *Wright*, 177 Penn. St. 387.) The rule of damages adopted by the referee was correct. Whether an action sounds in tort, or is based altogether on contract, the rule is the same. In either the amount of the recovery is the value of the property at the time of the conversion. (*Wright* v. *Bank of Metropolis*, 110 N. Y. 237; *Scott* v. *Rogers*, 31 N. Y. 681; *Ingram* v. *Rankin*, 47 Wis. 420; *Galigher* v. *Jones*, 129 U. S. 200.)

Cullen, J. This controversy arises out of a written agreement for the mining of coal in a tract of land in Pennsylvania. The instrument is denominated a lease. The material parts of the lease are stated in the report of a prior litigation between the parties found in 136 N. Y. p. 593. A similar abstract of its provisions, somewhat less full, is given in *Genet* v. *This Defendant* (122 N. Y. 505), and the lease is set forth in full, with the exception of the description of the lands demised, in 13 Misc. Rep. p. 409. Under the circumstances we do not feel justified in incumbering the reports with a further repetition of the terms and conditions of the instrument which may be readily ascertained by reference to the cases mentioned.

This is the third litigation between the parties which has come before this court, and though the litigations spring from the same instrument the causes of action in each suit have been essentially different and distinct from those in the other suits. The first action (122 N. Y. 505) was to recover damages for breach of the agreement in failing to take from the land as much coal as could be mined therefrom, and for an injunction restraining the defendant from using the plaintiff's land and the works erected thereon to mine coal from contigu-

ous lands and from draining water from such lands across the plaintiff's lands. The referee before whom the action was tried dismissed the complaint as to the first cause of action, holding that under the lease the defendant was not required to mine any more coal than the minimum quantity prescribed by the lease ; he directed judgment for the plaintiff on the second cause of action. Both parties appealed to this court where on the plaintiff's appeal the judgment against her on the first cause of action was affirmed and on the defendant's appeal the judgment in the plaintiff's favor was reversed and the complaint dismissed, with costs. The second action (136 N. Y. 593) was to recover damages for the negligent and improper manner in which it was alleged the defendant had mined the coal whereby the mine was destroyed and further mining rendered impossible. The case came to this court on appeal from a judgment sustaining a demurrer to the complaint. That judgment was reversed, the court holding that there was an implied covenant on the part of the defendant to properly conduct its mining operations so that the mine would not be destroyed and the plaintiff debarred from the expectation or prospect of further royalties from coal which would naturally be taken from the lands if the mine was in proper condition.

The present suit is based on four causes of action. The first and fourth allege that the defendant failed to make proper returns of the amount of coal mined and seek to charge the defendant with royalties due on the coal for which it failed to make return. The amount due to the plaintiff on these causes of action was adjusted on the trial by the stipulation of the parties, and the appeal presents no controversy on this subject. The second and third causes of action are to recover in assumpsit and not in tort the value of the waste coal or culm which passed through a mesh of a half-inch square. Coal of this size was, at the time of making the contract, considered of little or no value, but changes in the requirements of the coal market and new mechanical inventions have rendered this waste coal valuable. The defendant

marketed part of it and used the rest in the operation of its own engines.

The plaintiff claims that under the lease the defendant had no right to take any coal, except such as would not pass through a half-inch mesh, and that the title to the smaller or waste coal remained in her; hence, she sought to recover, and by the judgment below has recovered, the full value of such small coal, which exceeds the stipulated royalty of $12\frac{1}{2}$ cents a ton, which the defendant was required to pay on the other coal. The provision in the lease as to payments is as follows: "And the said party of the second part agrees to pay for the coal mined and taken out in pursuance of this agreement at the rate of $12\frac{1}{2}$ cents for every ton of 2,240 pounds of clean merchantable coal, exclusive of culm or mine waste, that will pass through a mesh of one-half inch square." The defendant's contention is that, under the agreement, it acquired title to all the coal, and that the provision that it should pay royalty only on coal of the specified size is not to be deemed as payment for such coal alone, but for all. Before entering upon the discussion of the proper construction of the agreement or lease, it is necessary to first dispose of certain special pleas interposed by the defendant to defeat the plaintiff's claim.

The defendant pleaded in its answer that by the laws of the state of Pennsylvania, in which the demised lands are situated, the lease operated as a present conveyance of all the coal contained in the premises as land, and that after its execution no title to the coal remained in the plaintiff. Of this it is sufficient to say that foreign law is a question of fact, not of law. The referee found "That there is no law peculiar to Pennsylvania governing the construction of written instruments; but the rule of the common law prevailing in New York, that the intention of the parties is to be gathered from the terms of the instrument, prevails in like manner in the state of Pennsylvania." This finding has been unanimously affirmed by the Appellate Division, and under the constitutional provision (Article 6, sec. 9) we are precluded from reviewing its correctness.

The defendant further pleaded the judgment of this court in the first action which came before it (122 N. Y. 505) and put the judgment roll in evidence. It is contended that the final judgment rendered by this court proceeded on the ground that title to all the coal passed to the defendant on the execution of the lease, and that whatever effect the subsequent decision of this court (136 N. Y. 593) may have had on the earlier decision as an authority, it could not limit its force as an estoppel when introduced in evidence in other litigations between the same parties. It is not necessary for us to consider how far the announcement in the argument of a judicial opinion of propositions by which a particular conclusion is reached is to be considered as an adjudication on those propositions which will be conclusive in other actions. The general rule is that " a judgment is conclusive upon the parties thereto, only in respect to the grounds covered by it and the facts necessary to uphold it. And, although a decree in express terms, professes to affirm a particular fact, yet, if such fact were immaterial to the issue and the controversy did not turn upon it, the decree will not conclude the parties in reference to such fact." (*People* v. *Johnson*, 38 N. Y. 63.) It is a sufficient answer to the appellant's claim to say that neither the judgment of this court nor the order and judgment entered thereon in the court below dismissed the complaint on the merits. Before the enactment of the Code of Civil Procedure while a dismissal of the complaint in an action at law was merely a judgment of nonsuit, a different rule prevailed in actions in equity. (*Wheeler* v. *Ruckman*, 51 N. Y. 391.) By section 1209 of the Code: " A final judgment, dismissing the complaint, either before or after a trial, rendered in an action hereafter commenced, does not prevent a new action for the same cause of action, unless it expressly declares, or it appears by the judgment roll, that it is rendered upon the merits." In the codifier's note it is stated that the object of the section was to make the rule which obtains in actions at law applicable also to actions in equity, and such was held to be its effect in *Petrie* v. *Trustees of Hamilton College* (92

Hun, 81). As this judgment would not have been conclusive between the parties in a new suit brought for the same cause of action, *a fortiori* it cannot be conclusive in litigations as to other causes of action. (See Freeman on Judgments, sec. 261.)

The rules governing the construction of contracts are well settled. " The mutual intention of the parties to the instrument is the great and sometimes the difficult object of inquiry, when the terms of it are not free from ambiguity. To reach and carry that intention into effect, the law, when it becomes necessary, will control even the literal terms of the contract, if they manifestly contravene the purpose. * * * But, if the intention be doubtful, it is to be sought after by reference to the context and to the nature of the contract. It must be a *reasonable construction.* * * * The whole instrument is to be viewed and compared in all its parts, so that every part of it may be made consistent and effectual." (2 Kent, 554.) " The rules for the construction of statutes are substantially the same as for the construction of contracts and other written instruments. The intention is to be deduced from a view of the whole statute, and that intention when ascertained will always prevail over the literal sense of the terms." (*Matter of New York and Brooklyn Bridge,* 72 N. Y. 529.) I think it requires but slight examination of the agreement and but little consideration of the claims of the parties to show that either construction contended for is unreasonable and leads to results that certainly were never contemplated. It will be seen that in the provision as to royalties already cited the lessee is required to pay 12½ cents a ton, not for all coal, but only for all " merchantable " coal that will not pass through a half-inch mesh. Now, merchantable is not to be construed in its ordinary sense, for these parties have adopted a terminology of their own, and by the contract exactly defined the meaning of " merchantable." " It is further mutually understood and agreed that the term ' merchantable coal ' shall be understood and defined as follows, to wit : That all coal mined under this agreement shall be with the same expense of mining and cleaning, of as good quality as the

average of coal taken from other mines and sent to market by the said party of the second part, and that it shall be subject to the inspection of the superintendent of the said party of the second part or such other person as they may employ for that purpose, whose decision as to quality of said coal shall be final and conclusive." It is not only entirely possible, but very probable, that at times large quantities of coal have been taken from these lands either not of as good quality as the average of the defendant's other coal, or if of as good quality, mined at greater expense than other coal. Yet though the coal may have been of somewhat inferior quality or mined at somewhat greater expense than other coal, its mining may have been most profitable to the appellant. Still, under the contract, it would not be merchantable coal. No distinction can be drawn between the two provisions; one, that the coal shall not pass through a half-inch mesh, and the other, that it shall be merchantable. If the appellant's contention is correct, then on all this coal, profitable as its mining may have been, the defendant is exempt from the payment of royalty, while if the plaintiff's claim is to prevail, she was entitled to all this coal, and the defendant could take none of it, though its labor in mining and preparing the coal had contributed probably nine-tenths of its value. Doubtless, persons might make a contract in accordance with the claim of the plaintiff or that of the defendant, but no such unnatural and unreasonable intention should be ascribed to the parties unless expressed in language too plain to admit of misconstruction. In the Pennsylvania cases cited by the learned counsel for the appellant (*Lance* v. *Lehigh & Wilkesbarre Coal Co.*, 163 Penn. St. 84; *Wright* v. *Warrior Run Coal Co.*, 182 Penn. St. 514), the leases under consideration contained no such provision as to merchantable coal as is found here which renders the construction of the provision for the payment of royalties adopted in those cases inadmissible in this. We are, therefore, not called upon to say whether we would follow those decisions even in the case of leases of the same tenor as those there under review.

Viewing the lease before us as a whole, and considering all its provisions, we think the intention of the parties quite clear and plain. The instrument commences with a lease of "all the coal contained in, on or under, etc." This would seem to entitle the lessee to take the whole of the coal if it so chose. The provisions for minimum royalties are as follows: "And the said party of the second part doth hereby promise and agree to mine from said land, in the year 1864, not less than ten thousand tons of coal; in the year 1865, not less than ten thousand tons of coal, and twenty thousand tons in each and every year thereafter. It being understood that the said party of the second part is to pay for ten thousand tons in each and every year, whether the same shall be actually taken out in such year or not; and that in case the maximum quantity of twenty thousand tons is not taken out in 1866 or any subsequent year, interest at the rate of seven per cent per annum shall be paid by the said party of the second part to the said parties of the first part, their heirs and assigns, upon such sums as the deficiency shall amount to. Said interest to be continued until the full quantity agreed to be taken out as aforesaid shall be reached. * * * Provided, further, that the said party of the second part shall have the privilege of taking out without charge at any time thereafter a quantity of coal equal in amount to the deficiency they may have paid for in any previous year or years." It will be seen that in these provisions no qualification that either the coal shall be merchantable or of a certain size is to be found. The lessee is to mine not less than ten thousand tons a year, and is to pay for ten thousand tons whether the same is "taken out or not." This language clearly contemplates that if coal is taken out it is to be paid for.

As was said by Judge Finch, in the case last before us (136 N. Y. 593), "nothing indicates that the defendant was to have any coal that it did not pay for." There are many provisions in the lease by which in the contingencies of mining being unprofitable, coal being unmerchantable or faults in the mine being met with, the lessee would be relieved from its

obligation to mine the coal.   The limitations in the provision
for the payment of royalty with reference to the coal being
merchantable and above a specified size, should be considered
as of the same nature as those which relieve the lessee from
the further prosecution of mining operations.   They are
merely privileges or options afforded the defendant of which
it might avail itself or not, as it saw fit.   Mining might become
unprofitable ; but this of itself would not terminate the con-
tract.   The lessee, nevertheless, could still continue the prose-
cution of the work in the expectation that the situation would
change ; but if it did take out coal, the obligation rested upon
it to pay the royalty for it.   The same is true, in our opinion,
as to the provisions relating to the size and merchantable char-
acter of the coal.   The lessee was not obliged to take coal of
inferior size or quality ; but it had the right to take such coal
if it chose, in which case it was bound to pay royalty on it
the same as upon other coal.   These views render it unneces-
sary to discuss any conflict of opinion which may exist between
the two divisions of this court in the cases already referred to.

Under our construction of the contract the judgment which
the respondent has recovered cannot be upheld, but it is not
necessary that there should be a new trial, unless the plaintiff
elects to take that course.   The amount of small coal or culm
taken by the appellant was fixed by the stipulation of the
parties on which stipulation was based the finding of the ref-
eree.   The referee awarded the plaintiff the value of the small
coal.   This value as to part of the coal exceeds the stipulated
royalty.   As to the remainder of the coal the value is not
equal to the royalty.   In our judgment the plaintiff should
have been awarded royalties on all the coal, regardless of its
value.   This can be done now, for it is a matter of ready com-
putation, and it is not necessary to change the form of the
action, since, as already stated, it is brought on contract, and
not in tort.   As we calculate it, reckoning the interest from
the same dates as those taken by the referee, the referee should
have awarded the plaintiff $24,171.55.

The judgment appealed from should be reversed and a new

trial granted, costs to abide the event, unless within twenty days the plaintiff stipulates to reduce her recovery of damages to $24,171.55; in case of such stipulation being made, then the judgment as reduced should be affirmed, without costs of appeal in this court to either party.

GRAY, J. (dissenting). I dissent. I think that the judgment should be affirmed, upon the ground that the coal which passed through the mesh remained the property of the plaintiff, as much as was the land. It was excluded by the terms of the agreement between the parties and never became the defendant's property. That was the effect of our former decision. (136 N. Y. 593.) It followed, therefore, that the defendant should pay for it, not at a price measured by the royalties mentioned in the agreement, but according to its value, and as to that the referee's allowance was less than what the evidence proved it to be.

PARKER, Ch. J., O'BRIEN, HAIGHT, LANDON and WERNER, JJ., concur with CULLEN, J.; GRAY, J., dissents.

Judgment modified, etc.