AUGUSTA G. GENET, Appellant, *v.* THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Respondents.

JUDGMENT OF DISMISSAL — NOT A BAR TO A SUBSEQUENT ACTION FOR SAME CAUSE UNLESS IT IS STATED THAT JUDGMENT IS RENDERED ON THE MERITS — CODE CIV. PRO. § 1209.   Under section 1209 of the Code of Civil Procedure, a judgment dismissing the complaint in an action in pursuance of a remittitur from the Court of Appeals is not a bar to a subsequent action between the same parties for the same cause of action, or admissible as conclusive evidence showing a judicial determination of the question in litigation in favor of the defendant, unless the judgment expressly declares, or it appears by the judgment roll, from the remittitur or some other part thereof, that the decision was rendered upon the merits; and if the judgment is silent upon the subject, such decision cannot be inferred from statements in the order upon which the judgment rests, or from anything in the record outside of the judgment roll.

*Genet* v. *Delaware & Hudson Canal Co.*, 49 App. Div. 645, reversed.

(Argued December 4, 1901; decided April 1, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 20, 1900, modifying and affirming as modified a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the dissenting opinion.

*David B. Hill* and *George C. Genet* for appellant. The defendants were erroneously allowed to put in evidence as *res adjudicata* the whole of the record of a former suit between these parties. (*Genet* v. *D. & H. C. Co.*, 122 N. Y. 600; 163 N. Y. 177.)

*Frank E. Smith* and *David Willcox* for respondents. The judgment in the former action was upon the merits and the judgment record was properly admitted in evidence. (*Edmonston* v. *McLoud*, 16 N. Y. 543; *Griffin* v. *Marquardt*, 17 N. Y. 28; *Benedict* v. *Arnoux*, 154 N. Y. 715.)

Parker, Ch. J.   The court erred in admitting in evidence the judgment roll in the former action between these parties entered on a dismissal of the complaint ordered by this court on appeal and reported in 122 N. Y. 505, inasmuch as it is not expressly declared in the judgment that it was rendered upon the merits and it does not so appear in the judgment roll.   It is not sufficient for a party who sets up a prior judgment as a bar or seeks to introduce it as conclusive evidence to produce a record showing a judicial determination in his favor of the question in litigation.   He must further show, and by the judgment roll, that the judgment was rendered upon the merits and cause it to appear that the question was a material one in the former action.   ( *Webb* v. *Buckelew*, 82 N. Y. 555; *Revere Copper Co.* v. *Dimock*, 90 N. Y. 33; *Springer* v. *Bien*, 128 N. Y. 99, 102; *Shaw* v. *Broadbent*, 129 N. Y. 114; *Rose* v. *Hawley*, 141 N. Y. 375; *Converse* v. *Sickles*, 146 N. Y. 200, 208; *Genet* v. *D. & H. C. Co.*, 163 N. Y. 173.)   In the latter case this court said: " And although a decree in express terms professes to confirm a particular fact, yet if the stated fact were immaterial to the issue and the controversy did not turn upon it the decree will not conclude the parties in reference to such fact."   The court in that case had under consideration the judgment roll now in question and, as to it, said: " It is a sufficient answer to the appellant's claim to say that neither the judgment of this court nor the order and judgment entered thereon in the court below dismissed the complaint on the merits."   And then after quoting section 1209 of the Code of Civil Procedure and referring to the codifiers' note relating thereto, continued: " As this judgment would not have been conclusive between the parties in a new suit brought for the same cause of action, *a fortiori*, it cannot be conclusive in litigation as to other causes of action."   That decision, therefore, seems to be a binding adjudication upon this court as to that question, cutting off the right of counsel to have it again considered by the court.   ( *Towle* v. *Forney*, 14 N. Y. 423.)

But if it were an open question the statute would require us

to reach the conclusion then expressed, for it provides, in effect, that the dismissal of the complaint, either before or after a trial, shall not have the effect of preventing a new action for the same cause of action, " unless it (the judgment) expressly declares or it appears by the judgment roll that it is rendered upon the merits." Now, the judgment entered upon the dismissal of the complaint in that action, pursuant to the decision of this court, does not expressly declare that such judgment was rendered upon the merits, and unless it otherwise appears in the judgment roll it follows that the court is prohibited by the statute from holding that it was rendered upon the merits. The judgment was of course rendered by the Special Term in pursuance of the remittitur sent down by this court, and it did not declare that the decision was upon the merits ; but if it appeared in the remittitur that the decision was rendered upon the merits, the requirements of the Code would be satisfied, for then the fact would necessarily appear by the judgment roll, of which the remittitur forms a part.

It quite often happens at the Special Term, through the omission of counsel to request the court to incorporate into the order that the complaint was dismissed upon the merits, or the neglect of the court to direct of its own motion the insertion of such a provision in the order, that a plaintiff is not cut off from bringing a new action, although the basis of the court's determination was that the action could not be maintained, and it intended to make a final disposition of it. The defendant afterward finds himself in such a case unable to invoke the judgment entered on the dismissal as a bar to an action and prevented from proving it as conclusive evidence against the plaintiff.

The courts might perhaps conclude to take other proof of the fact were it not that the legislature in its wisdom has seen fit to provide a clear-cut method by which the fact of the dismissal upon the merits may be established in a very simple way, namely, by expressly stating it in the judgment or causing the fact to appear in the judgment roll, as for instance in the order dismissing the complaint upon which the judgment

of dismissal is finally entered. That section applies to dismissals either before or after trial, and hence is applicable to decisions made by the appellate courts as well as the trial court. No reason for a different rule in the appellate courts has suggested itself, but if there were one the courts could not make practical use of it for the reason that the statute imperatively prohibits the courts from treating a judgment entered upon the dismissal of the complaint as preventing a new action as to the same subject-matter unless the final judgment was rendered upon the merits, and strictly limits the courts in the search for evidence, as to the fact of declarations to that effect, to the judgment or the judgment roll, the purpose undoubtedly being to have the disposition of the question rested upon absolute certainty and not upon speculation which might occasionally result from an exploration of the judgment roll, drawing the inference from certain facts found therein that the trial court or the appellate court, as the case may be, intended that the first action should be dismissed on the merits.

The suggestion is made that section 1209 could be so construed as to require it to be expressly stated in the judgment that it was rendered upon the merits, but if the judgment (in which we look for the whole determination) is silent on the subject, then we may draw the inference, for instance, from statements in the order upon which the judgment is to rest, that the determination was upon the merits. In other words, it is suggested that the section requires an express declaration to appear in the judgment, which is the final repository of the rights of the parties as to matters involved in the action in order to prevent a new action, but a statement of lesser value will suffice when it is found to be in the original order of dismissal, or other amendatory order, if there should happen to be one. It cannot readily be conceived that such a result could have been intended by the legislature, and if it were apt language for its accomplishment was not chosen, but directly the contrary, as it seems to us, for it has named the judgment as the more natural and appropriate place to assert finality between the parties as to matters in controversy, and

required that it should be expressly declared therein that it was rendered upon the merits; but if such an express declaration be omitted from the judgment, then that it will suffice if it. appear elsewhere in the judgment roll. If the construction we have given the section be not the only one of which it is capable, it is certainly a more reasonable one and one that is in full harmony with the spirit of the section and at the same time seems to be in accord with the letter.

The appellant further contends that the fourth finding, in which the court found, in effect, that the plaintiff with full knowledge of the conduct of the defendants had waived the right to terminate the contract by accepting royalties accruing thereunder and by bringing actions against the defendants in affirmance thereof, was error, in that the actions brought by the plaintiff were not in affirmance of the contract, while the royalties were accepted with the distinct understanding that it was without waiver or prejudice of any of the rights of the plaintiff as appeared by the testimony of the plaintiff, which is further supported by the receipts for mining rents, each one of which after acknowledging the receipt of the money stated that it was " without waiver or prejudice," in which form it was accepted by the defendants. The view has been taken so far that these words in the receipts have no special legal significance, which, under the surrounding circumstances disclosed by this record, may well be questioned. Those words in the legal profession and among business men have a distinct and certain meaning like other business phrases, such as C. O. D. and F. O. B. In such cases the meaning of the letters is perfectly well understood, and in business full force and effect will be given to them because they are thoroughly comprehended by all business men. So, too, the words " without waiver or prejudice " have in the legal profession and among business men a well-understood value. They import into any writing in which they appear that the parties have agreed that as between themselves the receipt of the money by one and its payment by the other shall not, because of the facts of the receipt and payment, have any

legal effect upon the rights of the parties in the premises; that such rights will be as open to settlement by negotiation or legal controversy as if the money had not been turned over by the one to the other. The contention that the phrase is meaningless because it does not point out in terms the subject to which it relates is without force if the phrase has by common consent come to mean what I have asserted, namely, that each and every one of the rights of the parties in the subject-matter out of which the payment grows is not to be affected in any wise by the payment of the money and its receipt. During all the time that these receipts were given there was existing litigation between the parties growing out of questions connected with the mining of coal upon the plaintiff's lands, the right to do which the defendants claim they have secured by contract, litigation which the plaintiff was pressing against the defendants, and it would seem as if it could not have been otherwise than perfectly understood between the parties, even in the absence of other testimony, that the plaintiff and defendants both appreciated that the object of inserting these words in the receipt was to protect, not a particular interest, for then it would have been specified, but all interests which plaintiff had under her contract with the defendants; to preserve the right to enforce them in any manner whatever, which, in the absence of an understanding to the contrary assented to by both parties, might be treated in law as having been waived by the conduct of the plaintiff in accepting the royalties to which she was entitled. It would seem as if the learned Appellate Division on a former appeal in this case might have erred in holding, as it in fact did, that this phrase in the receipts had, under the circumstances attending its making and delivery to defendants, no legal effect whatever.

The question, however, is not up for decision as I read the findings, which have been unanimously affirmed by the Appellate Division, for the trial court has not incorporated the receipts into the findings of fact nor disclosed whether it based its conclusion that the plaintiff treated the contract as in force by

accepting the royalties accruing thereunder, solely upon the receipt or upon other testimony taken in connection with the receipt; and hence we are bound to assume, in view of the unanimous affirmance by the Appellate Division, that there was evidence to support so much of the finding as in reality finds facts. This will probably be so far remedied on a new trial as to present to the court the clean-cut question of law: Whether, under the facts surrounding the receipt of the royalties by the plaintiff, she did waive such legal rights, if any, as she had in the premises.

The other questions brought to our attention by the Appellate Division are not open on this record for discussion in this court, but the judgment should be reversed because of the error in receiving in evidence the judgment roll in the former action, and a new trial granted, costs to abide the event. A statement of the facts of the case sufficiently appears in the dissenting opinion.

BARTLETT, J. (dissenting). This is the sixth action between the same parties that has come to this court, all of them arising out of a contract for the mining of coal on certain lands located at Scranton, in the State of Pennsylvania.

The plaintiff and her husband, George C. Genet, are described as parties of the first part in this contract, and the defendants as parties of the second part; the instrument bears date March 28th, 1864; the plaintiff was at the time of the execution of the contract, and is now, vested with the fee of the lands in question; excluding certain land covered by reservations in the contract, the tract actually devoted to the mining of coal is about ninety-eight acres.

The first action decided by this court is reported in 122 N. Y. 505; the second, 136 N. Y. 593; the third, 163 N. Y. 173; the fourth and fifth, 167 N. Y. 608. It is unnecessary to recite this contract in full, as it will be found, except description of premises, in the report of this case when first tried at Special Term (13 Misc. Rep. 409); its material provisions are also discussed in 136 N. Y. 593, and 122 N. Y. 505.

The present action was begun in the Superior Court of the city of New York on February 21st, 1893. It is based on a notice in writing dated February 1st, 1893, signed by the plaintiff and her husband, and served on defendants, which is in substance an election to terminate the contract on the ground that the defendants having ceased to mine coal on the premises, and a reasonable time having elapsed thereafter, the contract being executory may be terminated by the parties injured. The substance of the contract, a copy of which is annexed to the amended complaint, is as follows: The defendants are given the right to mine coal on the premises in question by elaborate provisions, which gave them the privilege " to dig and mine and remove said coal through and out of any shafts, slopes or tunnels they may dig, erect or construct upon the premises."

The defendants were also authorized to build structures, railroads, mine and wagon roads, ditches and drains on the surface as might be necessary; they were also accorded the privilege of piling on the land coal or culm; also " other appurtenances they may require for mining, receiving, removing, cleaning, screening, dumping, storing, preparing and forwarding the coal to be mined under this agreement."

The defendants agreed to mine in 1864 and 1865, in each of said years, not less than ten thousand tons of coal, and twenty thousand tons in each and every year thereafter. It is provided that if this maximum quantity is not taken out in any year interest at the rate of seven per centum per annum shall be paid by the defendants to the plaintiff " upon such sums as the deficiency shall amount to, said interest to be continued until the full quantity agreed to be taken out as aforesaid shall be reached." It is also provided as follows: " It being understood that the said party of the second part is to pay for ten thousand tons in each and every year whether the same shall actually be taken out in such year or not." Then follow provisions relieving the defendants from mining when impracticable, or the quality of the coal is unmerchantable under a definition contained in the contract.

The royalties on coal taken out are provided for as follows : " And the said party of the second part agrees to pay for coal mined and taken out, in pursuance of this agreement, at the rate of twelve and a half cents ($12\frac{1}{2}$) for every ton of (2240) twenty-two hundred and forty pounds of clean merchantable coal, exclusive of culm and mine waste that will pass through a mesh of one-half inch square." Then follow provisions not material at this time.

Near the close of the contract is found one of its most important provisions, which reads as follows : " And it is further agreed and understood that the party of the second part, their successors and assigns, may use and occupy the rights and privileges hereby granted, and the openings, buildings, fixtures and appurtenances made and constructed by them, for the mining, preparing and forwarding coal under this agreement, *for the mining, preparing and forwarding coal from any adjoining or contiguous lands,* until all the lands that they desire to take coal from and that can be mined and taken out through said openings, shafts and slopes shall be exhausted. That the party of the second part, their successors or assigns, shall have the right to rebuild, reconstruct or remove any or all of the buildings, fixtures, machinery, appurtenances and improvements during the continuance of this agreement and until the adjoining and contiguous lands that can be worked from their openings, shafts and tunnels shall be worked out. The removal of buildings, fixtures and appurtenances to be made within a reasonable time after the land shall have been exhausted."

It appears by the amended complaint that the defendants sank a shaft on plaintiff's property to a very considerable depth, known as the " Marvin Shaft," and ran gangways and tunnels therefrom through the lands of the plaintiff to coal lands owned by defendants adjacent on the southeast ; that, since said connections were made, the defendants have mined their own coal through the " Marvin Shaft." That defendants constructed a tunnel or gangway from the " Marvin Shaft " through plaintiff's lands to a shaft owned by defend-

ants, in an opposite direction, called " Leggett's Creek Shaft,"
for the purpose of bringing surplus water to the " Marvin
Shaft " and taking it thence by steam pumps to the Lacka-
wanna river.   That the shaft, breaker, buildings and improve-
ments constructed by defendants were of excessive capacity
and fraudulently erected by defendants for their own purposes
and to plaintiff's loss and damage.   That defendants have
piled culm, a certain refuse which accumulates in mining coal,
upon some ten acres of plaintiff's land, to a very great height,
the said culm being in part the product of mining coal from
defendants' lands and not authorized by the contract.

That, in September, 1886, a portion of the mine on plain-
tiff's land " caved in," and that defendants, well knowing it
needed extra care and support at that point, carelessly and
negligently omitted to furnish it, to plaintiff's damage.

That, since May 1st, 1888, the defendants have not mined
any coal from plaintiff's lands, and that they thereby became
exhausted of coal, within the terms of the agreement.

The prayer for relief is, that it may be adjudged that the
contract has been executed and ended, and that defendants
have no further rights thereunder, and that they be compelled
to vacate the premises ; that defendants account to plaintiff
for damages she has sustained ; that she be compensated for
the benefit and advantage to defendants for mining of coal
from their own land through the " Marvin Shaft " on a cer-
tain basis set forth ; that defendants be enjoined from claim-
ing any further rights under the contract.

The answer puts in issue the material allegations of the
amended complaint, challenges the jurisdiction of this court,
pleads the Statute of Limitations, adequate remedy at law,
waiver, and judgment in a former action in bar.   There have
been three trials of this action.   On the first trial there was
a decision for the defendants, the court holding, among other
things, that the agreement was, in legal effect, a conveyance
to the defendants of the coal in place, as land.   (13 Misc.
Rep. 409.)   The Appellate Division reversed this judgment
on the ground that the decision as to the agreement being a

deed of land was in conflict with a decision of this court con-
struing the contract, reported in 136 N. Y. 593. (*Genet* v.
*D. & H. C. Co.*, 2 App. Div. 491.)   At the second trial there
was a judgment for the plaintiff, which was reversed by the
Appellate Division on the ground that plaintiff by suing to
enforce the contract and accepting the royalties under it had
waived the right to terminate. (*Genet* v. *D. & H. C. Co.*, 28
App. Div. 328.)   The third trial resulted in a judgment dis-
missing the complaint on the merits, which was unanimously
affirmed by the Appellate Division.   The latter judgment is
here for review.

The trial judge adopted the short form of decision, under
section 1022 of the Code of Civil Procedure, and has stated
concisely the grounds upon which the issues have been
decided, and directed judgment thereon dismissing the com-
plaint on the merits.   The first ground stated is to the effect
that the defendants have not been careless or negligent as to
mining operations within plaintiff's lands ; but, on the con-
trary, have conducted such operations with ordinary and reason-
able care and skill.

The learned counsel for the appellant concedes that this
ground deals with a question of fact, and is not before the
court on this appeal.

The second ground states that the coal contained within the
plaintiff's land is not exhausted.   This would seem to be on
its face very clearly a finding of fact, but appellant's counsel
argues that although the coal, as a matter of fact, is not
exhausted, the defendants having ceased to mine plaintiff's
coal must be regarded as abandoning the contract, and it fol-
lows, as matter of law, that the coal in plaintiff's land must
be deemed exhausted.

The third ground is as follows : "The manner in which
defendant has conducted and is conducting mining operations
within the plaintiff's lands, and the uses which it has made and
is making of plaintiff's lands in connection therewith, were
and are all authorized by the contract between the parties,
attached to the complaint."

The appellant's counsel argues that the exception to this ground permits the argument of the question of law as to the construction of the contract.

This ground doubtless presents a mixed finding of fact and law, and it may be assumed that the construction of the contract can be discussed in the light of the facts found or presumed to have been found.

The fourth ground reads: " The plaintiff with full knowledge of the acts claimed to constitute careless or negligent mining, and with full knowledge of the manner in which defendant has conducted, and is conducting its mining operations, and of the use it was and is making of plaintiff's lands, has treated the contract as in force by accepting royalties accrued thereunder and by bringing actions against the defendant in affirmance thereof, whereby she has elected to treat the contract as in full force and has waived the right to terminate the same, if for any reason such right ever existed."

This, too, is a mixed finding of fact and law.   The plaintiff is found to have accepted accruing royalties under the contract and to have brought actions in affirmance of the same. The legal question of whether the facts found, or presumed to have been found, amount to a waiver, is properly raised. In other words, and speaking generally of the short form of decision, it is to be treated as a general verdict, and, in case of a unanimous decision of affirmance, we are not permitted to look into the record to determine whether there is any evidence to support it.   The only questions open to review in this court are such as are raised by exceptions to the admission or rejection of evidence, the charge of the trial judge to the jury and questions of law not involving the sufficiency of the evidence.   (*Amherst College* v. *Ritch*, 151 N. Y. 282; *Ayres* v. *D., L. & W. R. R. Co.*, 158 N. Y. 254, 257, 258; *Reed* v. *McCord*, 160 N. Y. 330, 337; *Meserole* v. *Hoyt*, 161 N. Y. 59, 61; *Cronin* v. *Lord*, 161 N. Y. 90, 94, 95; *City of Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.*, 168 N. Y. 610.)

There are two questions preliminary in their character.

1. Has this court jurisdiction to determine the rights of the parties under the contract in question ? The learned counsel for the respondents, while admitting that their original contention, that the contract is an executed conveyance in fee of the coal in place, as land, is contrary to the views expressed by this court in 136 N. Y. 593, yet argue at length in their brief that the writing is not a revocable license, and that the appropriate remedy for the grievances alleged in the complaint is an action of ejectment in the State of Pennsylvania.

The precise nature of this contract was thoroughly discussed by Judge FINCH (136 N. Y., pages 600 to 606), and the learned judge summed up his reasoning as follows : " The thing to be sold and the price to be paid were each alike dependent upon subsequent events, and the contract was, therefore, executory, and must be treated not as a deed into which no unexpressed covenants can be implied, but as an executory contract, the interpretation of which is open to clear and reasonable implications."

The contract being of the character thus described, and this court having the parties before it, has jurisdiction to construe the writing and determine the questions arising thereunder.

2. The other question is whether there was legal error in admitting in evidence, over the objection and exception of the plaintiff, the record of a judgment between the same parties, entered upon the decision of the Second Division of the Court of Appeals, reported in 122 N. Y. 505. The plaintiff's counsel stated at the trial that he did not object, so far as the judgment appealed from by the plaintiff was affirmed, but did object to it so far as the judgment in favor of the plaintiff was reversed, on the ground that it is not *res adjudicata.* This objection was overruled and plaintiff duly excepted.

The complaint in the action which resulted in the judgment in question was between the same parties as in the present action, was based upon the same contract and set forth two causes of action. (1) To recover damages for breach of the contract in failing to mine from the land described therein

as much coal as could be mined therefrom with capital and industry. (2) For an injunction restraining the defendants from using the plaintiff's land and the works erected thereon to mine coal from the adjoining and contiguous lands until all the plaintiff's coal had been mined, and from using the tunnels in and through the coal for the purpose of drawing water from the adjoining lands, and requiring them to close up said tunnels, except so far as they were necessary to mine coal from plaintiff's lands.

The first cause of action was dismissed on the merits by the referee and the judgment was affirmed by the General Term and this court.

On the second cause of action the judgment was for plaintiff and defendants enjoined (1) from using the shaft sunk upon the plaintiff's land, and the breaker, machinery and structures erected thereon for the purpose of mining and preparing for market coal from any adjoining and contiguous lands until all the coal which it was authorized to mine from plaintiff's lands under the agreement aforesaid had been taken out and prepared for market. (2) From depositing culm from coal mined from adjoining lands upon the surface of plaintiff's lands. The plaintiff was also awarded $3,000 damages sustained from the piling of culm on the property prior to the commencement of the action. Defendants were further required to close up the gangways made by them connecting the shaft in plaintiff's land (called the Marvin shaft) with shafts on adjoining lands called Leggett's Creek shaft and Van Storch's shaft, and also with other adjoining lands called the "Farm" so far as to prevent water from said two last-mentioned shafts and from the "Farm," running therefrom to and upon plaintiff's lands.

There were cross-appeals to the General Term where judgment in plaintiff's favor was slightly modified and affirmed. This court, as already stated, affirmed the judgment dismissing the complaint on the merits as to the first cause of action. It also reversed the judgment in favor of the plaintiff on the second cause of cause and dismissed the complaint.

It is true that the judgment, on the remittitur from this court, adjudging that those parts of the judgment appealed from by the defendants be reversed and complaint dismissed, does not declare in terms that the dismissal was on the merits.

Section 1209 of the Code of Civil Procedure is as follows : " A final judgment, dismissing the complaint, either before or after a trial, rendered in an action hereafter commenced, does not prevent a new action for the same cause of action, unless it expressly declares, or it appears by the judgment roll, that it is rendered upon the merits." In this case the judgment roll, which is in evidence, conclusively shows that no new trial was ordered and that the dismissal of the complaint was on the merits. The referee made twenty-eight findings of fact and ten conclusions of law, and these, together with the injunction and judgment that followed, taken in connection with the fact that no new trial was ordered, clearly disclose the questions litigated.

The judgment record was properly admitted in evidence and is *res adjudicata* as to the questions therein legally determined, and the grounds covered by it and the facts necessary to uphold it. (*People ex rel. Reilly v. Johnson,* 38 N. Y. 63.) The appellant relies on 163 N. Y. 173, an action growing out of this contract, and between the same parties, as authority for the contention that the judgment is not *res adjudicata.* A very different state of facts was presented in that case. The plaintiff in one of her causes of action sought to recover the value of the waste coal or culm which passed through a mesh a half inch square. As this court (Second Division) held in 122 N. Y. 505, that the legal effect of the contract was to vest in the defendants an estate in fee of all the coal in plaintiff's premises, as a separate piece of land, the defendants pleaded this judgment in bar as establishing that the waste coal and culm was its property. This court in 136 N. Y. 602, in construing the contract, held that the question as to the character of the contract was not in the case in 122 N. Y. 505, or at all necessary to its decision. The defendants argued that whatever effect this last decision may have had upon 122

N. Y. 505, as an authority, it could not limit its force as an estoppel. Judge CULLEN, writing the opinion of the court in 163 N. Y. 173, said as to this situation: "And although a decree in express terms professes to affirm a particular fact, yet if such fact were immaterial to the issue and the controversy did not turn upon it, the decree will not conclude the parties in reference to such fact."

It is true that Judge CULLEN added it was also a sufficient answer to defendants' claim that the judgment in 122 N. Y. did not dismiss the complaint on the merits. The decision of this point was purely *obiter*, as the judgment would not have been admissible had it shown a reversal on the merits. In the record now before us, however, it is made clear that the judgment in 122 N. Y. 505, did dismiss the complaint on the merits.

In 163 N. Y. 173, the defendants were met by the fact that as to the issue then on trial as to the ownership of waste coal or culm the judgment in 122 N. Y. 505, was not a bar to plaintiff's action. In the case before us that judgment determines several of the principal issues and is, to that extent, a complete bar.

After a long and expensive trial, followed by appeal to this court, in which an able and exhaustive opinion was written and published by the learned Second Division, settling important questions under this contract, it would seem as if the fact of no new trial being ordered appearing by the judgment roll should, under the circumstances, be held to show a reversal on the merits. The rule that the order or judgment roll should show a dismissal on the merits ought to be enforced, but with great strictness in a case like the one at bar.

The following issues were tried in 122 N. Y. 505, and decided in favor of defendants; the right to use the "Marvin Shaft" and appurtenances to mine coal, not only from plaintiff's land, but from defendants' adjoining land; the right to connect the "Marvin Shaft" with the adjoining land; the right to permit water to flow to "Marvin Shaft" from adjoining lands of defendants and pump it out into the river; the

right to pile culm from mining coal on adjoining lands on surface of plaintiff's land. The alleged excessive capacity of the "Marvin Shaft" and structures set up in the case at bar is based on the proposition that the right of defendants to mine coal on adjoining lands is not conferred by the contract. This issue is not only disposed of by the former action, but the provisions of the contract, already quoted in full, bearing on this point, very clearly establish, in express terms, the right of defendants to mine their coal on adjoining lands through the "Marvin Shaft."

It remains to consider any further questions of law properly before the court. The finding that the defendants had not been careless or negligent in the conduct of mining operations within the plaintiff's lands, but on the contrary have conducted such operations with ordinary and reasonable care and skill, is of great significance. The issue here disposed of was presented, in a former action to this court on demurrer to the complaint in 136 N. Y. 593.

The Special Term overruled the demurrer, the General Term reversed and this court, in reversing the latter court, decided that although there was no express stipulation in the contract against a negligent destruction of the mine, it was to be implied; and that plaintiff had a right of action on the implied promise.

The complaint in the former action was thus sustained in January, 1893. That action was never tried, but in February, 1893, this action was begun, embracing the cause of action of negligent mining, among others.

The final determination thereof in favor of defendants has a most important bearing on this case, as the failure of defendants to mine a large quantity of coal in plaintiff's lands during a certain period was due in great part to the "cave in" of 1886, which necessitated a further development of mining facilities.

The findings presumed to have been made in the present case in support of the short decision are ample to sustain the dismissal of the complaint on the merits when considered in

connection with the judgment record in evidence, pleaded as a bar to this action.

There are two questions of law which have been argued by appellant's counsel as having survived the unanimous decision of the Appellate Division. The first question arises under the third ground of decision already quoted which is in substance that the various acts of defendants are authorized by the contract. The appellant insists that the construction of the contract is before the court as a question of law. · If the former judgment of this court and the facts found in the case before us leave any questions open as to the construction of the contract, they may be considered.

It is finally settled that there has been no careless or negligent mining by defendants; that defendants had the right to mine their own coal over the lands of plaintiff; that water may be conducted from defendants' land to the shaft on plaintiff's land, and from thence removed by pumps to the river; that defendants have conducted and are conducting their mining operations on the plaintiff's land, and their own premises properly. This being the state of the record, and this court having held in 136 N. Y. 593, as already pointed out, that the writing between the parties is an executory contract, there is little remaining to discuss. It is clear that the contract is not a revocable license and can only be terminated by the plaintiff when the acts of the defendants amount to a complete repudiation thereof. (*Dubois* v. *D. & H. C. Co.*, 4 Wend. 285; *Graves* v. *White*, 87 N. Y. 463; *Hubbell* v. *Pacific Mutual Ins. Co.*, 100 N. Y. 41; *Freeth* v. *Burr*, L. R. [9 C. P.] 208; *Mersey Steel & Iron Co.* v. *Naylor*, L. R. [9 Q. B. Div.] 648; affd. in 9 App. Cas. 434; *Johnstone* v. *Milling*, L. R. [16 Q. B. Div.] 460; *L. S. & M. S. R. R. Co.* v. *Richards*, 152 Ill. 59.)

The amended complaint avers that since about May 1st, 1888, the defendants wholly ceased to mine any coal whatever from plaintiff's lands and thereby the said lands became exhausted of coal under the terms of the agreement.

The third trial of this case was had in March, 1899, and it

must be presumed from the state of the record that the trial
court found that coal was mined on the plaintiff's lands by
defendants up to the year 1899, and that royalties were paid
by the defendants to the plaintiff up to the early part of 1899.
It follows that the plaintiff has failed to bring herself within
the rule which justified her in serving a notice on defendants
terminating the contract and in asking the court to ratify her
action by its judgment.

The second question of law is raised by the exception to
the fourth ground of decision, already quoted, which deals
with the question of waiver. The trial judge on the facts
found decided that the plaintiff had waived the right to termi-
nate the contract, if for any reason it ever existed.

At the second trial of this action the Appellate Division
reversed the judgment in favor of plaintiff on the ground
that the plaintiff had waived her right to terminate the con-
tract for reasons about to be considered. (28 App. Div. 328.)

The trial court in the case at bar found that the plaintiff
" with full knowledge of the acts claimed to constitute care-
less or negligent mining and with full knowledge of the man-
ner in which defendant has conducted and is conducting its
mining operations and of the use it was and is making of
plaintiff's lands, has treated the contract as in force by accept-
ing royalties accruing thereunder and by bringing actions
against the defendants in affirmance thereof," etc. The facts
thus found, under the unanimous decision of affirmance, are
conclusive upon this court.

It only remains to consider whether such acts are a waiver
of the plaintiff's right to terminate the contract, if such right
ever existed. It would seem to require no argument to estab-
lish the proposition that the acceptance of royalties under the
contract and the bringing of actions in affirmance thereof are
clearly a waiver of the right to terminate it for any cause
then existing. It is a familiar principle that when it becomes
necessary to elect between inconsistent rights and remedies,
the election, when made, is final. (*Terry* v. *Munger*, 121 N.
Y. 161; *Pryor* v. *Foster*, 130 N. Y. 171; *Conrow* v. *Little*,

115 N. Y. 387.) It is a rule founded on common sense and common justice that a party ought not to accept benefits under a contract and at the same time challenge its validity.

In *City of Buffalo* v. *Balcom* (134 N. Y. 532) it was held that one who had the full benefit of a contract with a municipality, which is *ultra vires*, will not be permitted in an action upon it to question its validity. (See, also, *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Rider Life Raft Co.* v. *Roach*, 97 N. Y. 378; *Starin* v. *Edson*, 112 N. Y. 206; *Mayor, etc. of N. Y.* v. *Sonneborn*, 113 N. Y. 423; *Mayor, etc. of N. Y.* v. *Huntington*, 114 N. Y. 631; *R. & B. R. R. Co.* v. *Proctor*, 29 Vt. 93; *Davis* v. *Old Colony R. R. Co.*, 131 Mass. 258.)

The general principle of waiver and estoppel is considered in the following cases: *Sherman* v. *McKeon* (38 N. Y. 266); *Townsend* v. *Scholey* (42 N. Y. 18); *Maynard* v. *Anderson* (54 N. Y. 641).

The plaintiff, under the facts found, waived the right to terminate the contract, if such a right ever existed.

Our attention is called to the form of the receipt which plaintiff gave to defendants on receiving royalties. The receipt is in the usual form, with these words added, "*without waiver or prejudice.*"

As there is no finding as to the form of these receipts and the manner in which they were given or accepted, this question is not before us. Assuming that it is here, I am of opinion that the receipt in no way qualifies the acceptance of royalties by plaintiff.

A receipt is not a contract, but a mere declaration or admission in writing, but if a contract is embodied therein, it would receive, to that extent, judicial recognition. (*Ryan* v. *Ward*, 48 N. Y. 204, 208.) We have here the naked statement, "without waiver or prejudice."

The language of Van Brunt, P. J., when this case was before the Appellate Division on a former trial, is apposite: "It is true that, in the receipt for the royalties and minimum rents given by the plaintiff for this series of years, the money

is said to be received without waiver or prejudice. Without waiver of what, or without prejudice to what, is not stated; and there is no evidence tending to show that the defendant, upon the payment of the money, agreed that it might be received without the ordinary incidents attending receipt." (28 App. Div. 328.)

I have examined the other exceptions, but find none presenting reversible error or requiring discussion.

This opinion was written on the assumption that it expressed the views of a majority of the court, which proved to be erroneous. It is now published with the approval of the court, notwithstanding its length, as containing a detailed statement of the facts and history of the cause.

The questions arising under this contract, which is now nearly forty years old, are, as was said by this court in 136 N. Y. 593, "difficult and important," but it would seem as if twenty years of litigation must have settled some of them.

The judgment appealed from should be affirmed, with costs.

Gray, Martin and Cullen, JJ., concur with Parker, Ch. J.; Vann and Werner, JJ., concur with Bartlett, J.

Judgment reversed, etc.