negligence therein alleged caused any damage, are somewhat obscure, but the fifth clause seems to set forth a cause of action, under Harris v. Tumbridge, 8 Abb. N. C. 291, 83 N. Y. 92, 38 Am. Rep. 398, which appears also to be authority for the measure of damage sought to be applied. See, also, Campbell v. Wright, 118 N. Y. 594, 23 N. E. 914; Roger v. Wiley, 131 N. Y. 527, 30 N. E. 582; Lazare v. Allen, 20 App. Div. 616, 47 N. Y. Supp. 340. We cannot follow the plaintiff in his contention that the first counterclaim, as pleaded, defeats itself; because, in alleging that a note was given for the amount apparently due from defendant to plaintiffs, it virtually asserts that an account was stated between the parties, upon which the amount represented by the note was found to be due. The rule undoubtedly is that the giving of a note for the amount shown due by an account is prima facie evidence of an account stated, but it is only that, and it remains open to the maker of the note to show that it was not given in acknowledgment of the correctness of the account and in settlement thereof. Wright v. Wright, 74 Hun, 138, 26 N. Y. Supp. 238.

Our conclusion is that the first counterclaim states a cause of action. As to the second and third counterclaims, their sufficiency is even more apparent. The second sets forth a cause of action for conversion of the collateral, and is quite sufficient without considering the paragraph numbered 11 which may be disregarded. The third counterclaim also sets out a cause of action in conversion. It differs from the second, because, while it alleges notice to defendant of the time and place of sale, it further alleges that plaintiffs promised defendant that they would not sell at the time so fixed, unless and until they had given him previous notice to that effect, and that they did sell at that time without giving him such notice. This is precisely equivalent to selling without any notice at all. The object of notice is to give the owner of the collateral an opportunity to protect himself against a sacrifice of his collateral, and to mislead him, as defendant alleges he was misled by the plaintiffs, necessarily operates to deprive him of the opportunity for self-protection.

It follows that the demurrers were properly overruled, and that the judgment must be affirmed, with costs, with leave to plaintiffs to withdraw the demurrers and reply within six days, upon payment of costs in this court and the court below. All concur.

---

(109 App. Div. 733)

GENET v. PRESIDENT, ETC., OF DELAWARE & H. CANAL CO.

(Supreme Court, Appellate Division, First Department. December 15, 1905.)

1. JUDGMENT—RES JUDICATA—IDENTITY OF ISSUES.

Defendant leased of plaintiff coal under plaintiff's land, defendant to pay for coal mined at a certain royalty per ton on merchantable coal, exclusive of "culm or mine waste," which would pass through a half-inch mesh. Plaintiff sued defendant, on the ground that it had appropriated certain coal from a mass of culm; plaintiff's theory being that the entire mass of culm belonged to her. Plaintiff recovered, and on appeal it was held that the provision in regard to culm was to be construed as permitting defendant to mine it if it chose, and that, if it did mine and appropriate it, it was liable to pay royalties. *Held*, that the judg-

ment for plaintiff and the satisfaction thereof was no bar to a subsequent action by plaintiff to recover royalties on further coal taken from the mass of culm.

2. SAME—MATTERS PRECLUDED—MATTERS THAT MIGHT HAVE BEEN LITIGATED.
   A judgment precludes a subsequent action, not only for what was recovered in the former action, but what might have been recovered under the issues.
   [Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 1104.]
   O'Brien, P. J., dissenting.

Cross-Appeals from Judgment on Report of Referee.

Action by Augusta G. Genet against the president, managers, and company of the Delaware & Hudson Canal Company. From a judgment in favor of plaintiff, both parties appeal. Affirmed as against the defendant, but reversed on plaintiff's appeal, and a new trial granted on the issues therein involved.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Learned Hand, for plaintiff.
Frank E. Smith, for defendant.

HOUGHTON, J.  The contract between the parties hereto and the various phases of the controversy between them arising out of the mining of coal by defendant upon plaintiff's land can be found in so many reported decisions that it is only necessary to state such facts as are particularly involved in the questions presented by this appeal. This action is known as "Action No. 4," and was begun in February, 1891, and on its trial resulted in a judgment in favor of plaintiff for the value of a certain quantity of small coal extracted by the defendant from culm or mine waste, which on appeal to the Court of Appeals (167 N. Y. 608, 60 N. E. 1111) was reversed, unless plaintiff stipulated to reduce her recovery to the royalty per ton provided by the mining contract executed by her to defendant. This she did not do; but, instead, amended her complaint, so as to demand royalties upon all tonnage taken from the mine from its opening to the commencement of the action. The issues joined by this amended complaint and answer to it were tried before a referee, and have resulted in a judgment for the plaintiff, from which both parties appeal.

By his decision the referee gave the plaintiff royalties on all pea and buckwheat coal separated and taken from the culm or mine waste resulting from mining on the plaintiff's land, and sold or burned by defendant in its own boilers from 1886 to 1891. He also gave plaintiff royalties on 79 per cent. of the culm deposited by defendant at what is known as the "Leggett's Creek Shaft," situated on defendant's own land. Ordinarily, coal from plaintiff's land is brought to the surface and broken at what is termed the "Marvin Shaft"; but because of some accident to plaintiff's mine it became more convenient to take the coal from her lands underground through defendant's own mine, and lift and break it at the Leggett shaft. It is the culm resulting from the breaking and sifting of coal thus mined on which the referee allowed royalty. The plaintiff insists that the

referee should have allowed to her royalty on all the culm as coal thus taken by the defendant to its own land, instead of deducting 21 per cent, as foreign substance. And the defendant complains that this taking was not such an appropriation by it as to subject it to royalty at all; but that if it was, the percentage of coal found by the referee was altogether too high, and further, that it is not liable for the royalty on the small coal actually separated from the culm at the Leggett and Marvin dumps, and sold by it, or burned in its own boilers.

While the finding by the referee is not strictly in accordance with the rule laid down by this court in another action between these parties (71 App. Div. 613, 75 N. Y. Supp. 553) with respect to culm, as culm actually transported from the plaintiff's land to the defendant's land, yet we do not feel called upon to disturb his finding that 21 per cent. of the mass of culm consisted of substances which could not be denominated coal. The facts proved justified him in saying that the defendant had taken and appropriated at least all the coal that was contained in the culm which it placed upon its own land. With respect to the small coal and burned by the defendant, there would seem to be no reason why the defendant should not pay royalty. Indeed, the defendant does not really dispute its liability, but claims that in the adjustment of mining operations and the payment in certain years for coal not mined, it should have credit for the coal thus charged to it. From the mass of figures before the referee, and the conflicting claims thereon, he has concluded otherwise, and we think his conclusion should be upheld. So far, therefore, as the appeal of the defendant is concerned, the judgment must be affirmed.

There is another branch of the case, however, which presents a more serious question. The plaintiff insisted on the trial, and sought to prove, that the defendant had appropriated all of the culm resulting from the mining of coal on her land, and was therefore liable for royalty thereon. This culm was mixed with a large quantity of culm produced from coal mined from defendant's own mines, and all was piled on plaintiff's land and is designated the Marvin dump, and is the product of years of mining operations. When the contract between these parties was entered into all this was supposed to be waste, and one of plaintiff's obligations under the contract was to supply a place for its deposit. Improved mining operations and machinery, however, have rendered it possible, to extract a large quantity of valuable small size coal from it. The referee refused to pass upon the question as to whether or not the defendant had appropriated this culm in such manner as to make it liable for royalty, because he deemed the plaintiff estopped from asserting claim thereto by reason of a prior action brought by this plaintiff against this defendant. That action is known as "Action No. 2," and was begun July 1, 1886, and resulted in a judgment for the plaintiff, which upon appeal to the Court of Appeals (163 N. Y. 173, 57 N. E. 297) was modified, and, as modified, affirmed, and the judgment paid and satisfied.

We think the referee erred in holding that the plaintiff was either estopped or barred by this former action, from now claiming a royalty on the small coal remaining in the culm produced from

coal mined on her land not heretofore extracted by defendant, and now lying in the Marvin dump. The former action was based on the theory that the culm or mine waste was the property of plaintiff, and that the defendant was not entitled to take any coal from the plaintiff's land except such as would pass over a half-inch mesh, and that what passed through such a mesh was as much the property of herself as the soil or rock which was loosened in the mining operations. Proceeding upon this theory the plaintiff charged by her complaint, that the defendant by using smaller screens than half inch, had separated and carried away and sold and consumed large quantities of coal known as "pea," "buckwheat," and "birdseye," and demanded that defendant pay her its market value. In addition, she alleged that the defendant had not accounted to her at the stipulated royalty for all of the coal produced by it from her lands, which would pass over a half-inch mesh, but had made false returns to her and demanded an accounting therefor. In addition, it was alleged that defendant purposely broke up the coal finer than was necessary in order to reduce the quantity, which would pass over a screen of a half-inch mesh. In its answer to this complaint, in addition to its denials and separate defenses, the defendant pleaded that it was the owner of all the small coal contained in the culm, and that the plaintiff had no right thereto. Under these issues the plaintiff had a recovery at its market value for a large quantity of pea and buckwheat coal which defendant had taken from plaintiff's lands and sold, and for a considerable quantity of culm which it had also taken and sold or burned. It is difficult to see how small coal or culm which the defendant had never taken or sold or consumed, but which remained in the Marvin dump, was embraced within the issues of this action, or how the plaintiff can be estopped from now asserting that defendant has actually taken further coal from this dump or has by its acts appropriated and taken the whole mass. The interpretation of the contract by the Court of Appeals in holding that the defendant was liable only for royalty upon each ton so taken, instead of its value does not change the situation. The plaintiff did not charge the defendant with having appropriated the entire mass of culm; but, on the contrary alleged that the culm was hers, and that the defendant had separated and taken coal from it which belonged to her. She not only claimed this coal so taken, but she claimed to be the owner of what remained unseparated; and because it was finally determined that the coal was not hers, and that she was only entitled to a royalty on it, did not change her attitude as to the whole mass.

With respect to small coal which had been actually separated and used or sold by defendant, and culm which had been actully taken from the plaintiff's land and sold or consumed by defendant prior to July 1, 1886, the referee was correct in holding that the plaintiff was barred from recovery in the present action. All these were directly within the former issue, and plaintiff should have made proof of them on her former trial. If she failed to do so, nevertheless, they cannot be the subject of a subsequent action. In this holding that the plaintiff is not estopped or barred from asserting her rights in the culm or coal now remaining in the Marvin dump, we do not decide that the defendant has so appropriated it or excluded plaintiff therefrom, as to

give her a present right of action for the coal therein or for the culm as a mass. This depends upon many elements, which can be developed upon a retrial, freed from the embarrassment of estoppel which the present referee felt constrained to apply.

The judgment should be affirmed as against the defendant, with costs to plaintiff respondent, and reversed on the appeal of plaintiff, with respect to culm and coal remaining in the Marvin dump, and a new trial granted as to that issue before another referee, with costs to plaintiff appellant to abide the event.

INGRAHAM, McLAUGHLIN, and LAUGHLIN, JJ., concur.

O'BRIEN, P. J. (dissenting). I think the judgment should be affirmed on both appeals.

(110 App. Div. 867)

GENET v. PRESIDENT, ETC., OF DELAWARE & H. CANAL CO.

(Supreme Court, Appellate Division, First Department. December 15, 1905.)

Appeal from Special Term, New York County.

