(75 App. Div. 369.)

## EVERETT v. EVERETT.

(Supreme Court, Appellate Division, Second Department.   October 17, 1902.)

1. DIVORCE—ANNULMENT—JUDGMENT OF SISTER STATE—RES JUDICATA.

> The judgment of a probate court in Massachusetts in a proceeding by a wife against her husband to compel him to support her, denying the prayer of the petition on the ground that the parties were divorced by the decree of the supreme court of New York at the suit of the husband, is not res adjudicata in a suit by the wife to set aside the decree of divorce on the ground that it was procured by fraud; the probate court having merely given faith and credit to the decree of a court of a sister state, without having before it the question of fraud in procuring the decree.

Appeal from special term, Kings county.

Suit by Georgia L. Everett against Edward Everett.   From a judgment of dismissal, plaintiff appeals.   Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, and HIRSCHBERG, JJ.

Alfred E. Sander, for appellant.

George Zabriskie, for respondent.

WOODWARD, J.   This action was brought for the purpose of setting aside, on the ground of fraud, a judgment of the supreme court entered in April, 1888, annulling the marriage of the parties to this action.   The plaintiff alleges that she was married to the defendant on October 30, 1884, at Brooklyn, by John Courtney, a justice of the peace, and cohabited with him up to June 1, 1891; that in 1887 the defendant, with fraudulent intent, told her that his family would not recognize such a marriage, and that a ceremonial marriage must take place before a clergyman; that, in order to have such marriage take place, the previous marriage would have to be annulled; that proceedings for such purpose would be merely formal, and that the plaintiff need not pay any attention thereto; that, relying upon such statement, she paid no attention to an action which was instituted against her by the defendant in December, 1887, in which a judgment was entered in April, 1888, annulling the Courtney marriage; and that the parties continued to live together till June, 1891, the defendant reiterating his promise to have a marriage ceremony, which, however, never took place.   The plaintiff further alleged that in 1879, when the plaintiff was under 16 years of age, at a social gathering in Providence, R. I., in a spirit of fun, a sham marriage ceremony was performed between the plaintiff and William G. Morrison, but that the person who performed the ceremony had no authority under the laws of Rhode Island to perform a marriage ceremony, the plaintiff being a minor under 16 years of age; that within an hour after the ceremony the parties separated, and the plaintiff returned to her home in Massachusetts, and nothing further was heard of a marriage until two months afterward, when Morrison called on the parents of the plaintiff, and claimed that the ceremony was a valid marriage; and "that the said Morrison urged his claims with such persistency that the plaintiff went to live with him in the city of Boston, Mass., and

lived with him for a period of six months, but left him before she reached the age of 17 years"; that, as the plaintiff was a minor under the age of 16 years, and there was no consent of parents or guardian, and no license and no record, the alleged marriage with Morrison was null and void; that the defendant made inquiries to determine whether there was a valid marriage, and became satisfied that there was not, and that he knew all of these facts when the marriage before Judge Courtney occurred. The allegations of the defense, which were sufficient to raise an issue upon the merits, are not material to be here considered, except that it was pleaded in the fifth defense that the defendant had always been a resident of Boston, Suffolk county, Mass., and that in February, 1895, the plaintiff commenced an action against him in the probate court of that county (the said court having jurisdiction), alleging that she was his lawful wife, and that without just cause he had failed to support her, and praying such order as might be deemed expedient concerning her support. Issues were raised by the pleadings in this case, the defendant setting up the decree of the supreme court of April, 1888, annulling his marriage with the plaintiff, and which declared that the plaintiff "was at the date of said supposed marriage a married woman, and the legal wife of one William G. Morrison." The plaintiff alleged a common-law marriage with the defendant subsequent to the decree mentioned, but this does not appear to have been considered, and the probate court entered a decree, as follows:

"Commonwealth of Massachusetts, Suffolk—ss.: At a probate court holden at Boston, in and for said county of Suffolk, on the 25th day of March, in the year of our Lord 1897, on the petition of Georgia L. Everett, of Boston, in said county, the wife of Edward Everett, of said Boston, praying that said court will make such order as it deems expedient concerning her support, said Edward Everett having appeared by his attorney, and it appearing to the court, after hearing thereon, that the prayer of said petition should not be granted, it is ordered that said petition be dismissed.
"Robert Grant, Judge of Probate Court."

The learned court at special term held that this was a decision of the question of the marital relations of the plaintiff and defendant, upon the merits, and that this constitutes res judicata in this action. This is the only question involved in this appeal, and we are clearly of the opinion that, while the decision of the probate court of Massachusetts may be regarded as a determination upon the merits of the question at issue between the parties, it has no bearing whatever upon the question presented by this action, which is whether the decree of April, 1888, was procured by fraud perpetrated upon the plaintiff and the courts of this state. On the case as it was presented to the probate court in Massachusetts there was a judgment of the supreme court of the state of New York annulling the marriage between the plaintiff and defendant, and that provision of the federal constitution which requires the courts of each state to give full faith and credit to the judgments and decrees of the courts in the several states, and the statutes enacted to give effect to this clause, made it incumbent upon the probate court to hold that the plaintiff was not the wife of the defendant. But this could not prevent the courts of the state of New York from inquiring whether the decree of April, 1888,

was secured through a fraud practiced upon the plaintiff and the court. The requirement of the constitution and the law is that the judgments of the state courts shall have the same faith and credit in other states as they have in the state where they were rendered (Kerr v. Kerr, 41 N. Y. 272), and a fraudulent judgment is open to question at any time, even in a foreign jurisdiction. Kinnier v. Kinnier, 45 N. Y. 535, 6 Am. Rep. 132; Kerr v. Kerr, supra. The Massachusetts court has given the same credit to a judgment of the supreme court of this state that it would have here so long as it is not reversed, set aside, or impeached. It has held, following the decree of April, 1888, that the plaintiff is not the lawful wife of the defendant; but it would be a strange thing if the Massachusetts court could, by such recognition of the decrees of the courts of this state, forever prevent the courts of New York from inquiring whether the decree of April, 1888, was procured by fraud. The question of the faith and credit to which the decree of April, 1888, was entitled was not in issue in the Massachusetts court. The plaintiff alleged that she was the lawful wife of the defendant. He denied this and put the decree of April, 1888, in evidence. Upon the face of the judgment the parties were not husband and wife, and the probate court dismissed the petition, asking that a provision be made for her support by the defendant. But even if the issue of the alleged fraud in procuring the judgment had been asserted in the Massachusetts court, it could not estop the courts of the state of New York from having control of their own judgments. The court on which the imposition has been practiced may deal with its own judgment as it sees fit. It may institute an independent inquiry, and, upon being satisfied as to the fraud, may vacate the judgment of its own motion. Ruger v. Heckel, 21 Hun, 489, 492. The constitutional requirement, as stated in the statute made to give effect to the constitutional provision, is that a judgment must, in every state, be given the same faith and credit to which it is entitled where it was rendered. Mills v. Duryee, 7 Cranch, 483, 3 L. Ed. 411. It is well settled by authority that a judgment of one state can have no greater force or authority than that which attached in the state where it was rendered. Van Cleaf v. Burns, 118 N. Y. 549, 553, 23 N. E. 883, 16 Am. St. Rep. 759, and authorities there cited; Rigney v. Rigney, 127 N. Y. 408, 415, 28 N. E. 407, 24 Am. St. Rep. 462, and authorities there cited. It is equally well settled that, subject to the qualification that they are open to inquiry as to the jurisdiction of the court which gave them, and as to the notice to the defendant, the judgment of a state court, not reversed by a superior court having jurisdiction, nor set aside by a direct proceeding in chancery, is conclusive in the courts of all of the other states where the subject-matter of controversy is the same. Christmas v. Russell, 5 Wall. 290, 18 L. Ed. 475. In Hanley v. Donoghue, 116 U. S. 1, 4, 6 Sup. Ct. 242, 244, 29 L. Ed. 535, the court say: "Judgments recovered in one state of the Union, when proved in the courts of another, differ from judgments recovered in a foreign country in no other respect than that of not being re-examinable upon the merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties,"—citing Buckner v. Finley,

2 Pet. 592, 7 L. Ed. 528; McElmoyle v. Cohen, 13 Pet. 312, 324, 10 L. Ed. 177; D'Arcy v. Ketchum, 11 How. 165, 176, 13 L. Ed. 648; Christmas v. Russell, 5 Wall. 290, 305, 18 L. Ed. 475; and Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897; Simmons v. Saul, 138 U. S. 439, 459, 11 Sup. Ct. 369, 34 L. Ed. 1054. The question of the fraud in the procuring of the judgment or decree of April, 1888, not having been open to the parties in the matter before the probate court in Massachusetts, where the judgment of the supreme court was necessarily given the same faith and credit as it would have had here so long as it remained in force, the judgment in the Massachusetts court could not operate to give any greater authority to the judgment of the supreme court of this state than it already had, and it was subject always to an equitable action to set it aside upon the ground of fraud. We are forced to the conclusion, therefore, that the learned court at special term erred in holding the judgment of the Massachusetts court to be res judicata in the present action.

The judgment should be reversed, with costs. All concur.

GOODRICH, P. J. (concurring). I reach the same conclusion as my associates, but by a different course of reasoning. Before the opinion of Mr. Justice WOODWARD was presented to my associates and to me, I had written the following opinion, and I still adhere to the views therein expressed:

The appeal involves the single question whether a decree of a probate court in Massachusetts, dismissing a proceeding instituted by the plaintiff against the defendant for her separate support, constitutes res judicata in this action, which was subsequently brought by her to annul a judgment of divorce rendered in an action brought by the defendant against the plaintiff. Plaintiff alleges that she was married to the defendant on October 30, 1884, at Brooklyn, by John Courtney, a justice of the peace, and cohabited with him up to June 1, 1891; that in 1887 the defendant, with fraudulent intent, told her that his family would not recognize such a marriage, and that a ceremonial marriage must take place before a clergyman; that, in order to have such marriage take place, the previous marriage would have to be annulled; that proceedings for such purpose would be merely formal, and that the plaintiff need not pay any attention thereto; that, relying upon such statement, she paid no attention to an action which was instituted against her by the defendant in December, 1887, in which a judgment was entered in April, 1888, annulling the Courtney marriage; and that the parties continued to live together till June, 1891, the defendant reiterating his promise to have a marriage ceremony, which, however, never took place. The complaint further sets out that in 1879, when the plaintiff was under 16 years of age, at a social gathering in Providence, R. I., in a spirit of fun, a sham marriage ceremony was performed between the plaintiff and William G. Morrison, but that the person who performed the ceremony had no authority under the laws of Rhode Island to perform a marriage ceremony, the plaintiff being a minor under 16 years of age; that within an hour after the ceremony the parties separated, and the plaintiff returned to her home in Massachusetts, and nothing

further was heard of a marriage until two months afterward, when Morrison called on the plaintiff's parents, and claimed that the ceremony was a valid marriage; "that the said Morrison urged his claims with such persistency that the plaintiff went to live with him in the city of Boston, Mass., and lived with him for a period of six months, but left him before she reached the age of 17 years"; that, as the plaintiff was a minor, under the age of 16 years, and there was no consent of parents or guardian, and no license and no record, the alleged marriage with Morrison was null and void; that the defendant made inquiries to determine whether there was a valid marriage, and became satisfied that there was not, and that he knew all these facts when the marriage before Judge Courtney occurred.

The course pursued at the trial renders it unnecessary to detail the allegations of the answer except as to the fifth defense therein. The record contains the following statement:

"It was suggested by defendant's counsel in open court that the issues raised by the fifth defense pleaded in the answer should be tried first, and, if the court should hold that defense to be insufficient, the other issues should be tried afterwards; and the court so directed."

The issue raised by the fifth defense was that the defendant had always been a resident of Boston, Suffolk county, Mass., and that in February, 1895, the plaintiff commenced an action against him in the probate court of that county (the said court having jurisdiction), alleging that she was his lawful wife, and that without just cause he had failed to support her, and praying such order as might be deemed expedient concerning her support. By order of the court the plaintiff was required to file specifications as to the alleged marriage, in pursuance of which she set up that she was married on October 31, 1884, to the defendant, by Judge Courtney, in Brooklyn, "and, further, that a legal marriage according to the laws of the state of New York was entered into in that state between your petitioner and said Edward Everett on or about the 15th day of April, A. D. 1888, by mutual consent and consummation and acknowledgment and cohabitation in that state; and such consent, acknowledgment, and cohabitation continued in that state, and also in this commonwealth, from said 15th day of April, 1888, to the 30th day of May, 1891, at which time he deserted her, and said marriage is still of legal force and effect." The defendant answered, admitting that a marriage ceremony had taken place before Judge Courtney, and averring that on April 4, 1888, by decree of the supreme court of this state said supposed marriage was decreed null and void, on the ground that the plaintiff "was at the date of said supposed marriage a married woman, and the legal wife of one William G. Morrison." At the present trial the evidence offered in support of the fifth defense consisted of such portions of the constitution and laws of Massachusetts as confer jurisdiction of the proceedings upon the probate court of that commonwealth, an exemplified copy of the record of the probate court, and the explanatory testimony of counsel who appeared for the respective parties. The decree of the probate court reads as follows:

"Commonwealth of Massachusetts, Suffolk—ss.: At a probate court holden at Boston, in and for said county of Suffolk, on the 25th day of March, in the year of our Lord 1897, on the petition of Georgia L. Everett, of Boston, in said county, the wife of Edward Everett, of said Boston, praying that said court will make such order as it deems expedient concerning her support, said Edward Everett having appeared by his attorney, and it appearing to the court, after hearing thereon, that the prayer of said petition should not be granted, it is ordered that said petition be dismissed.

"Robert Grant, Judge of Probate Court."

The learned justice at special term held that the decree of the probate court was a determination on the merits, that it was a conclusive determination that the plaintiff was married to Morrison at the time of the Courtney ceremony, and thereupon directed the dismissal of the complaint; and from the judgment entered thereon the plaintiff appeals.

Our decision of this appeal must rest upon a determination of the question whether the decree of the probate court was a decision upon the merits, or simply a nonsuit. In Genet v. Canal Co., 170 N. Y. 278, 63 N. E. 350, Chief Judge Parker, speaking for the court, said (page 279, 170 N. Y., page 350, 63 N. E.):

"It is not sufficient for a party who sets up a prior judgment as a bar or seeks to introduce it as conclusive evidence to produce a record showing a judicial determination in his favor of the question in litigation. He must further show, and by the judgment roll, that the judgment was rendered upon the merits, and cause it to appear that the question was a material one in the former action."

Section 1209 of the Code of Civil Procedure reads:

"A final judgment, dismissing the complaint, either before or after a trial, rendered in an action hereafter commenced, does not prevent a new action for the same cause of action, unless it expressly declares, or it appears by the judgment roll, that it is rendered upon the merits."

In Clapp v. Thomas, 5 Allen, 158, Judge Metcalf cited with approval what was said in March, Arb. 215, that a nonsuit "is but like blowing out of a candle, which a man at his own pleasure lights again." The Code makes no distinction between domestic and foreign judgments. Judge Cullen pointed out, in Genet v. Canal Co., 163 N. Y. 173, 57 N. E. 297, that it is stated in the codifiers' notes that the object of the section (1209) was to make the rule as to nonsuits which obtains in actions at law applicable to actions in equity. So we must apply the rule stated by Judge Parker to the decree of the probate court, and, as it does not appear by the judgment roll that the judgment was rendered upon the merits, hold that it was merely a nonsuit. It is said in 1 Freem. Judgm. p. 273, that the rule is now generally conceded that parol evidence may be received for the purpose of showing whether a question was determined in a former suit, and that the estoppel extends, beyond what appears in the face of the judgment, to every allegation which, having been made on one side and denied on the other, was at issue and determined in the proceedings. So, doubtless, the testimony of the lawyers on both sides in the probate court was introduced on the present trial without objection, for the purpose of showing that by the practice of the probate court its decree involved the question whether the plaintiff was in fact the wife of the defendant, and that such ques-

tion was material to the decision, as stated in the Genet Case. In this view the course of the trial in the probate court becomes material. The plaintiff alleged that she was the wife of the defendant. Under order of the court she specified both the Courtney marriage and a subsequent common-law marriage. Defendant's counsel introduced the judgment of our supreme court, annulling the Courtney marriage. Plaintiff's counsel in the probate court seems to have conceded that this was a bar to her cause of action, and he made no reference to the common-law marriage, but asked the court to insert in the decree a clause that such dismissal was without prejudice. This was not done, and the decree is, by its terms, simply a dismissal, and not a decree upon the merits.

One of the counsel for the defendant before the probate court testified on the trial of the present case that:

"Under the decision of the court made that day, Mrs. Everett could come in again, as I understand it, provided she in the meantime had that decree of the supreme court and that record annulled and reversed. While that record and decree stood as it was when we introduced it into the case,—while that stood in the way,—this was a final decree; but the court stated in words substantially to this effect: that it would not say she could not come back again if the New York decree, which I have referred to, was reversed or set aside; otherwise not, as I understand the court,—final except for that reason."

If the decree is in the nature of a nonsuit, it is not res judicata upon the fifth defense before the special term. It is true that the plaintiff's petition was necessarily based on the fact of a valid and subsisting marriage between her and the plaintiff, and that the probate court was called upon to decide that question, and did decide it in favor of the defendant by giving faith to the judgment of our court; but the attention of the probate court does not seem to have been called to the fact that the allegation or specification of the petitioner also alleged a common-law marriage. No evidence was offered in the probate court upon that subject. The proceedings seem to have been conducted solely with relation to the Courtney ceremony, and without reference to the common-law marriage.

We must not lost sight of the fact that the present action is brought to annul the decree of April 4, 1888, which annulled the Courtney ceremony. There is a prayer that it be adjudged and decreed that "the marriage contract heretofore made between the plaintiff and the defendant is still binding, and that the marriage between this plaintiff and the defendant is still in full force and effect." This, however, evidently relates to the Courtney marriage, and not to any common-law marriage.

It is clear to me that the decree of the probate court was simply as for a nonsuit, and is not res judicata in the present action. It follows that the judgment should be reversed.