## SMITH v. MOSIER et al.

(Circuit Court, N. D. New York. March 23, 1909.)

1. UNITED STATES (§ 67*)—BONDS OF CONTRACTORS FOR PUBLIC WORK—EXTENT OF LIABILITY.

A bond executed by a contractor for government work, conditioned as required by Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), that the contractor "shall promptly make payments to all persons supplying him labor and materials in the prosecution of the work," secures payment for labor or materials furnished to a subcontractor and which went into the work, as well as to the principal contractor direct, and in an action thereon based on such a claim it is not a defense that the principal contractor has paid the subcontractor in full.

[Ed. Note.—For other cases, see United States, Dec. Dig. § 67.*]

2. INTERPLEADER (§ 8*)—NATURE AND SCOPE OF REMEDY.

The purpose of an action of interpleader is to permit a party who holds a fund or property, or who owes a debt to which two or more persons make claim, to have it determined between them to which it belongs. It is essential to the maintenance of the action that there be a specific fund or property or debt owing, and that the plaintiff does not dispute his liability to some one therefor; and the action will not lie where the establishment of plaintiff's liability to one claimant will not necessarily defeat his liability to the other, or where there is a controversy between the plaintiff and a defendant as to the amount due.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. §§ 8, 9, 11; Dec. Dig. § 8.*

For other definitions, see Words and Phrases, vol. 1, pp. 788–790.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** Judgment (§ 570*)—Causes of Action Barred—Suit of Interpleader.

Where a suit of interpleader was dismissed on the ground that plaintiff could not maintain it, the judgment cannot constitute an adjudication of a claim made by a defendant against the plaintiff which will bar a subsequent action thereon, such an issue being immaterial in the suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1028–1040; Dec. Dig. § 570.*]

**4.** Judgment (§ 828*)—Effect of Judgment of State Court in Federal Court.

A judgment rendered in a state court is to be given the same force and effect as a bar or an estoppel in a federal court as is given to it in the courts where rendered.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 828.*

Conclusiveness as between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468.]

**5.** Judgment (§ 949*)—Judgment as Bar—Pleading and Proof.

It is incumbent on a defendant setting up a prior judgment as a bar to an action to allege and prove that the particular point or question as to which he claims the estoppel was necessarily in issue and necessarily decided in such prior action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1799; Dec. Dig. § 949.*]

## At Law.

Action to recover, in behalf of F. Lewis Smith, the sum of $642.08, with interest from August 1, 1905, under a statute of the United States providing for the giving of a bond by contractors with the United States for the performance of work, etc., containing a provision that the obligors shall and will in all respects duly and fully observe and perform all the covenants, etc., of the contract, and that the obligors will promptly make full payment to all persons supplying them labor or materials in the prosecution of the work provided for in said contract.

F. T. Cahill, for plaintiff.
Thayer, Tuttle & White, for defendants Mosier and another.
Miller & Fincke, for Empire State Surety Co.

RAY, District Judge. On or about the 16th day of November, 1903, Mosier & Summers, a copartnership, entered into a contract with the United States for the construction of 16 brick buildings at Ft. Ontario, in the state of New York, at a price agreed upon—$223,795.87.

Under and pursuant to the statute in such cases made and provided, said Mosier & Summers as principals, and the Empire State Surety Company as surety, on or about the 21st day of November, 1903, duly executed and delivered their bond reciting the contract, and which bond was conditioned in substance and effect that Mosier & Summers "shall and will, in all respects, duly and fully observe and perform all and singular the covenants, conditions, and agreements in and by the said contract agreed and covenanted by said Mosier & Summers to be observed and performed according to the true intent and meaning of the said contract, and as well during any period of extension of said contract that may be granted on the part of the United States as during the original term of the same, and shall promptly make full payments to all persons supplying them labor or materials in the prose-

cution of the work provided for in said contract," and in case the said Mosier & Summers complied with and performed the conditions, then the obligation of the said bond was to be void and of no effect; otherwise to remain in full force and virtue.

The time for the performance of the contract was twice extended, and such extensions were agreed to by the surety company. One Max L. Kurchhoff made an oral contract with Mosier & Summers to do the painting of the buildings mentioned and described in the said contract between Mosier & Summers and the United States, and to furnish the paint and materials for painting the said buildings, for which he was to receive from Mosier & Summers the sum of $5,435. Kurchhoff performed the agreement on his part, and supplied materials and did the painting of said buildings. F. Lewis Smith, for whose benefit this suit is brought, furnished the said Kurchhoff with certain paints, oils, and other materials which were used in doing such painting, at Kurchhoff's request, and upon his promise to pay therefor. There is a balance due Smith from Kurchhoff amounting to the sum of $642.08, with interest thereon from August 1, 1905, for such paints, oils, and materials. No part of same has been paid to Smith by any person. In due course the said Charles Mosier and William Summers paid to said Max L. Kurchhoff the full amount which they agreed to pay Kurchhoff for painting said buildings and supplying the paints and other materials for doing the work.

This action is brought upon the theory that F. Lewis Smith supplied Mosier & Summers with paints and materials which were used by them in performing their said contract with the United States. The complaint alleges that to be the fact, and also alleges that Mosier & Summers failed to pay Smith the said balance due him. The complaint also states that the said contract was finally completed and settled November 30, 1905, and that this action was brought within one year after the final settlement and completion of the said contract between Mosier & Summers and the United States. There is, however, an agreed statement of facts to the effect above stated. The condition of the bond is that Mosier & Summers will fully perform the contract according to its true intent and meaning, and that they will promptly make full payments to all persons who supply them with labor or materials in the prosecution of the work provided for in the said contract.

It seems hard to hold that, under this contract and bond with the condition recited, the contractors and their surety, the Empire State Surety Company, are liable to pay all the debts owing by subcontractors of Mosier & Summers to persons who supplied labor and materials, or labor or materials, which actually went into the buildings which Mosier & Summers contracted to build and did build for the United States under the provisions of said contract, when said Mosier & Summers have already paid such subcontractors in full for the work done and materials furnished. I would not so hold were I not forced thereto by the decision of the Supreme Court of the United States in United States, for the Use of Hill, v. American Surety Company, 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437, which in effect overrules United States v. Farley et al. (C. C.) 91 Fed. 474, and United States

v. Simon et al., 98 Fed. 73, 38 C. C. A. 659. These cases were cited by the defendant in error before the United States Supreme Court, but not referred to by the court in giving its opinion.

In United States, for the Use of Hill, v. American Surety Company, 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437, the New Jersey Foundry & Machine Company entered into a written contract with the United States for the construction of four observation towers, for the agreed compensation of $2,575. The contract contained this provision:

"That the said New Jersey Foundry and Machine Company shall be responsible for and pay all liabilities incurred in the prosecution of the work for labor and material."

This, of course, was a provision for the benefit and protection of the United States, and was not a promise made for the benefit of third persons. This provision in words is not found in the contract between Mosier & Summers and the United States. It is, of course, implied, for when Mosier & Summers agreed to "furnish all labor and material required for the construction proper of" certain buildings, describing them, for the compensation mentioned, it was implied that they would pay therefor.

The bond given by the New Jersey Company, as principal, and the American Surety Company, as surety, was the same as here in its obligations and conditions, except as to parties and penalty.

After the making of the contract and the execution and delivery of the bond, the New Jersey Foundry & Machine Company entered into a contract with the Richard Manufacturing Company for certain portions of the work, and that company entered upon the performance of its contract with the New Jersey Company, and, while so engaged, Hill & Hill, the plaintiffs, at the instance and request of the Richard Manufacturing Company "scraped and painted the four observation towers" agreed to be constructed by said New Jersey Company for the United States, for which the Richard Manufacturing Company agreed to pay Hill & Hill $246.80, of which sum $141.80 remained unpaid when the action was brought.

The Supreme Court placed no stress on the language quoted from the contract, but held that the bonds given by contractors under the statute referred to (Act Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], now amended, Act Feb. 24, 1905, c. 778, 33 Stat. 811 [U. S. Comp. St. 1901, p. 709]) are for the protection of and do protect those who do work for and supply materials to subcontractors as well as to those who do work for and supply materials to the contractors themselves, which work is done in and upon the government work or structure contracted to be done, and which material goes into such government works or buildings. The court, per Mr. Justice Day, said:

"In considering the statute and determining the scope of the bond, divergent views have been urged upon the court. Upon the one hand, it is insisted that the bond is to be strictly construed and a recovery limited to those who have furnished material or labor directly to the contractor; and, upon the other, that a more liberal construction be given and a recovery permitted to those who have furnished labor and materials which have been

169 F.—28

used in the prosecution of the work, whether furnished under the contract directly to the contractor, or to a subcontractor. * * *

"The courts of this country have generally given to statutes intending to secure to those furnishing labor and supplies for the construction of buildings a liberal interpretation, with a view of effecting their purpose to require payment to those who have contributed by their labor or material to the erection of buildings to be owned and enjoyed by those who profit by the contribution of such labor or materials. Mining Co. v. Cullens, 104 U. S. 176, 177, 26 L. Ed. 704. And the rule which permits a surety to stand upon his strict legal rights, when applicable, does not prevent a construction of the bond with a view·to determining the fair scope and meaning of the contract in the light of the language used and the circumstances surrounding the parties. Ulster County Savings Inst. v. Young, 161 N. Y. 23, 30, 55 N. E. 483.

"As against the United States, no lien can be provided upon its public buildings or grounds, and it was the purpose of this act to substitute the obligation of a bond for the security which might otherwise be obtained by attaching a lien to the property of an individual. The purpose of the law is, as its title declares, 'For the protection of persons furnishing materials and labor for the construction of public works.' If literally construed, the obligation of the bond might be limited to secure only persons supplying labor or materials directly to the contractor, for which he would be personally liable. But we must not overlook, in construing this obligation, the manifest purpose of the statute to require that material and labor actually contributed to the construction of the public building shall be paid for, and to provide a security to that end. * * *

"Looking to the terms of this statute in its original form, and as amended in 1905, we find the same congressional purpose to require payment for material and labor which have been furnished for the construction of public works. The affidavit to be filed with the head of the department under the direction of which the work has been prosecuted requires the affidavit to state that labor or materials for the prosecution of such work has been supplied by him, for which payment has not been made and such persons are given a right of action on the bond in the name of the United States. Language could hardly be plainer to evidence the intention of Congress to protect those whose labor or material has contributed to the prosecution of the work. There is no language in the statute nor in the bond which is therein authorized limiting the right of recovery to those who furnish material or labor directly to the contractor, but all persons supplying the contractor with labor or materials in the prosecution of the work provided for in the contact are to be protected. The source of the labor or material is not indicated or circumscribed. It is only required to be 'supplied' to the contractor in the prosecution of the work provided for. How supplied is not stated, and could only be known as the work advanced and the labor and material are furnished.

"If a construction is given to the bond so limiting the obligation incurred as to· permit only those to recover who have contracted directly with the principal, it may happen that the material and labor which have contributed to the structure will not be paid for, owing to the default of subcontractors, and the manifest purpose of the statute to require compensation to those who have supplied such labor or material will be defeated. * * *

"In view of the declared purpose of the statute, in the light of which this bond must be read, and considering that the act declares in terms the purpose to protect those who have furnished labor or material in the prosecution of the work, we think it would be giving too narrow a construction to its terms to limit its benefits to those only who supply such labor or materials directly to the contractor. The obligation is 'to make full payments to all persons supplying it with labor or materials in the prosecution of the work provided for in said contract.' This language, read in the light of the statute, looks to the protection of those who supply the labor or materials provided for in the contract, and not to the particular contract or engagement under which the labor or materials were supplied. If the contractor sees fit to let the work to a subcontractor, who employs labor and buys materials which

are used to carry out and fulfill the engagement of the original contract to construct a public building, he is thereby supplied with the materials and labor for the fulfillment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials."

Assuming this to be the correct construction of the statute and of the scope of the obligation of the bond, which I must do, it is no defense that the contractors, Mosier & Summers, paid the subcontractor, Kurchhoff. They and their surety are bound to pay Smith, who furnished the paints and oils that went into these buildings to Kurchhoff, who was employed by Mosier & Summers as a subcontractor. This the bond bound them to do. There is no evidence that Smith ever consented that payment be made to Kurchhoff, or that he acquiesced therein.

The sole remaining question is, Does a certain judgment entered in the clerk's office of the county of Erie, N. Y., in an action in the Supreme Court of the state of New York, wherein Charles Mosier and William Summers, defendants here, were plaintiffs, and Julius L. Kurchhoff, Max L. Kurchhoff, Jr.—the said subcontractor—and said F. Lewis Smith, the person for whose benefit this action is brought, were defendants, estop or bar the said Smith from maintaining this action? The correct solution of that question depends upon the nature of that action, the parties thereto, its purpose, scope, the pleadings, and what questions were at issue and decided, or might and ought to have been put at issue and determined. Smith was a party defendant in that action, but the Empire State Surety Company was not a party thereto. That action was as follows, and based on these additional facts: In addition to the work Max L. Kurchhoff agreed to do for Mosier & Summers in executing said government contract for the compensation of $5,345, he performed certain extra work on such buildings, and furnished certain extra materials which were put into same. At the time such action was brought, January 31, 1906, there was due and unpaid to said Max L. Kurchhoff for work and materials on his contract with Mosier & Summers $264.04, and for such extra work and materials $221.45, or $100, there being a dispute as to the correct sum. While Max L. Kurchhoff was doing the said work on said buildings he employed said Julius L. Kurchhoff to aid and assist him therein, and promised to pay therefor, and said Julius L. Kurchhoff performed services in such employment worth and of the value of $500 and more. Prior to the commencement of such action, Max L. Kurchhoff, by an instrument in writing, sold, assigned, and transferred his said claim against Mosier & Summers to Julius L. Kurchhoff to apply on the amount due and owing from him to Julius. Thereupon, and before the commencement of the action in the Supreme Court, Julius L. Kurchhoff commenced an action in the Municipal Court of the city of Buffalo against said Mosier & Summers to recover said sum of $484.49, the amount he claimed was owing by them to him by virtue of such assignment. Before the commencement of such action in the said Municipal Court, and at the time it was brought, said F. Lewis Smith was claiming and insisting that said Mosier & Summers were liable to and owing him said $642.08 for such work done and materials furnished in and upon the said buildings, by virtue

of and under the said statute of the United States, said contract between the United States and Mosier & Summers, and the bond given by them and said surety company.

Thereupon said Mosier & Summers brought the said action in the Supreme Court against said defendants, not including the said surety company, alleging all the material facts, and also the insolvency of said Max L. Kurchhoff, including the transfer of said claim to Julius L. Kurchhoff and the claim made by Smith as aforesaid, and that on account of such insolvency of Max L. Kurchhoff, should Julius L. be allowed to recover judgment in the Municipal Court and collect same, and should they thereafter be held liable to Smith under said contract and bond and compelled to pay him, irreparable injury would be done them, as they would have no recourse against said Max L. Kurchhoff on account of his insolvency.

Judgment was demanded as follows:

"That the defendants and each of them be restrained by injunction from taking any further proceedings against plaintiffs in relation to the foregoing matters, and that the defendant, Julius L. Kurchhoff, be restrained and enjoined from further prosecution of his said action against these plaintiffs [Mosier & Summers] in the Municipal Court of Buffalo. That the defendants be required to interplead together concerning their claims to said moneys, and that all of the rights of the parties herein be determined, and that the plaintiffs have their costs of this action."

Said Smith, defendant there, and, in fact, the plaintiff here, appeared in that action and put in an answer, in which he set up the contract between Mosier & Summers and the United States; the agreement between them and Max L. Kurchhoff to do certain of the work; the fact that he furnished such material for said Kurchhoff in doing same, and that same went into the buildings; that Mosier & Summers were liable to him for the purchase price of the materials used in the execution of the contract, and that there was due from them to him $642.08 and interest from August 1, 1905; and that he, Smith, was "entitled to the fund in litigation in this action, whatever it may be." He demanded judgment "determining that he is entitled to the sum in litigation in this action, whatever it may be," and for such other and further relief as he might be entitled to.

The situation at that time was this:

(1) Mosier & Summers owed Max L. Kurchhoff a balance of $484.49 according to the terms of their agreement with him.

(2) Max L. Kurchhoff owed Smith $642.08 for material which Smith had delivered to said Kurchhoff to put in the buildings Mosier & Summers had built for the United States, and which Kurchhoff had put therein, and which materials were part of the consideration for the indebtedness of Mosier & Summers to Max L. Kurchhoff.

(3) Mosier & Summers were liable to Smith for the purchase price of the said materials by virtue of the statute of the United States, the contract between Mosier & Summers and the United States, and the said bond executed by them and the said surety company, as was the surety company.

(4) Max L. Kurchhoff owed his brother, Julius L. Kurchhoff, over $500, for work done in painting such buildings—that is, for work,

labor, and services he had performed for the same subcontractor and put into the said buildings—and this was also a part of the consideration for the indebtedness of Mosier & Summers to Max L. Kurchhoff.

(5) Max L. Kurchhoff, the subcontractor, had assigned his claims against Mosier & Summers to Julius L. Kurchhoff to apply in part payment of the amount or sum due him.

(6) Julius L. Kurchhoff sued Mosier & Summers to recover the said amount owing primarily from them to Max L., but, by virtue of the assignment, then owing to Julius L.

(7) Mosier & Summers were liable to both Smith and Julius L. Kurchhoff for the sums due them, respectively, for the work, labor, and materials they, respectively, had furnished Max L. Kurchhoff, and which he had put into said buildings pursuant to his agreement with Mosier & Summers. United States, for Use of Hill, v. American Surety Company, 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437.

(8) Max L. Kurchhoff had become insolvent, so that neither Smith nor Julius L. could collect of him, but Julius was secured by the assignment of the claim of Max L. against Mosier & Summers in case he collected it.

(9) If Mosier & Summers had paid Smith his claim, for which they were liable, they could have successfully resisted any claim made by Max L. Kurchhoff for the balance due him, or any claim made by his assignee, Julius L., on that claim. It would have been a defense to show that, while Mosier & Summers owed Max L. under the agreement, a part of the consideration therefor was the materials furnished by Smith to Max L., and that as Max L. had not paid for the materials, and Mosier & Summers had been compelled to do so to protect themselves, it must go in reduction of the claim of Max L. This defense would have been equally available against Julius L. in the suit brought by him on the assigned claim. Had that defense been interposed and Julius L. defeated, he could have proceeded against Mosier & Summers for the work done at the request of the subcontractor, Max L. Neither Max L. nor Julius L., as assignee of Max L., were entitled to recover on the claim of Max L., provided Mosier & Summers paid Smith. Julius L., as assignee of Max L., stood in his shoes.

(10) This defense was not interposed. Mosier & Summers denied their liability to Smith, and did not pay him. They did not deny that they owed Max L. Kurchhoff or his assignee, Julius L., the sum of $263.04 under the agreement between Mosier & Summers and Kurchhoff, and "an additional sum of about $100 on account of extras," making $363.04, but stated in the complaint that they had been sued by Julius L. for the sum of $484.49. It is seen that this raised a dispute between the plaintiffs there, Mosier & Summers, and the defendant, Julius L., as to the amount due and owing by the plaintiffs to said defendant. In other words, the plaintiffs there were not indifferent parties. Instead of paying Smith and then defending against the Kurchhoff claim, they brought the interpleader suit, in which they sought to have it determined whether Smith or Julius L., as assignee of Max L., was entitled to the said sum of $484.49, as claimed by Julius L., and which he claimed was the balance due Max L. in accordance with the

terms of the contract between Mosier & Summers and Max L. for work, labor, and materials furnished by him to them, including extras, but which was subject to an offset in case Mosier & Summers paid Smith. At the same time the plaintiffs there alleged that the amount due on the agreement and for extras was only $363.04. They admitted nothing further.

(11) Mosier & Summers had fully performed their contract with the United States, and had been paid the full contract price. The money received by them was their own. Neither Max L. Kurchhoff, nor Julius L. Kurchhoff, nor Smith had any lien or claim on that money or any part of it. No part of it was a fund in the hands of Mosier & Summers subject to the claims of two different parties, each claiming to be the owner thereof.

(12) Julius L. Kurchhoff, by virtue of the assignment from Max L., claimed the said balance alleged by him to be due to Max L. for work, labor, and services done and material furnished according to the terms of an ordinary agreement to perform work and labor and to furnish materials at a fixed price or compensation to be paid therefor, and that Mosier & Summers were liable therefor on their contract.

(13) Smith claimed that Mosier & Summers, the contractors, were liable to him for the sum of $642.08, the value and purchase price of paints, oils, and other materials used in the construction of the government buildings, furnished by him to Max L. Kurchhoff, a subcontractor, and for which he had agreed to pay him, Smith, but had not paid, and that such liability arose under the contract between Mosier & Summers and the United States, a certain bond given by Mosier & Summers as principals and the Empire State Surety Company to the United States, and a certain statute of the United States, whereby said Mosier & Summers and said surety company had obligated themselves to pay all persons furnishing material to either the contractor or the subcontractors.

(14) It is observed that the sum or amount due Smith or claimed by him was not the same in amount, or for the same services or material, as that claimed by Kurchhoff. Also, that the amount claimed by Kurchhoff was not the same in amount as that admitted by Mosier & Summers. There was no contract or agreement between Smith and Mosier & Summers under which Smith had furnished them or Kurchhoff the said materials. Smith claimed that the liability of Mosier & Summers to him resulted from the government contract, the bond, the statute, and the fact that he had furnished material to the subcontractor, Kurchhoff, which went into the construction of the government buildings in execution of such government contract. Smith was about to bring suit to enforce that liability. This liability was not conceded by Mosier & Summers, but denied. This claim of Smith against Mosier & Summers gave rise to no contention or dispute between Smith and either of the Kurchhoffs.

(15) It is true, however, that Julius L., as assignee of Max L., was seeking to recover a balance due for work, labor, and materials, the value of the materials being more than the balance due, furnished by Max L. to Mosier & Summers as contractors, but which materials had

been furnished to Max L., a subcontractor, by Smith, and for which he, Smith, had not been paid. Max L. owed Smith for the materials, and Mosier & Summers by paying Smith could have defeated the Kurchhoff claim, but this would not have been a dispute between Smith and Kurchhoff.

(16) Julius L. was entitled to his full pay from Mosier & Summers for the work he did for Max L. in and upon the buildings under the bond, etc., referred to. However, he did not make that claim, as he had received his pay by an assignment of the claim of Max L. against Mosier & Summers, but which could have been defeated by them and defended against successfully by paying Smith. He had the right to stand on that and take his chances of Mosier & Summers paying Smith. As matters stood Mosier & Summers had no defense against the claim and demand of Julius L. for work done. Clearly they had no defense against Smith in any suit brought by him on the bond, etc., against them and the surety company.

(17) Could the question of the liability of Mosier & Summers and the surety company to Smith have been tried and determined in the said suit of interpleader in the Supreme Court, above referred to? It is perfectly clear that the court could try and determine the question whether or not Smith had any claim to the money due from Mosier & Summers to Kurchhoff, and that question it did rightly determine. Whether it based its decision on the correct ground or on an incorrect ground is immaterial.

The court held, as matter of law, that, on the facts, the plaintiffs could not maintain their action, and directed that their complaint be dismissed, and dissolved the preliminary injunction against Julius L. The court wrote an opinion to the effect that Smith had no claim against Mosier & Summers under the contract, bond, and statute referred to. If that question was necessarily involved and at issue, and necessarily decided in that action, then the judgment there is res adjudicata here as between these parties; otherwise not. The surety company is not liable to Smith if Mosier & Summers are not.

In that interpleader action Smith filed an answer setting up the facts, and claimed the sum or debt due from Mosier & Summers to Kurchhoff, which sum Kurchhoff also claimed. He did not go beyond that and demand a judgment against Mosier & Summers. The question, and the only question, was, Is Smith entitled to the sum of money Mosier & Summers agreed to pay Kurchhoff for certain work, labor, and materials?

It is perfectly clear that that action of interpleader was properly dismissed; that Mosier & Summers could not maintain it; not, however, for the reason or on the ground that Smith had no claim on the bond and right of action against Mosier & Summers and the surety company. If Mosier & Summers had admitted that they owed a specific or certain sum or debt to either Smith or Kurchhoff, which they did not do; had alleged that both Smith and Kurchhoff claimed that debt or sum, conceded to be due to the one or the other; that they did not know which of the claimants was entitled thereto, but were ready and willing to pay it to either, to the one of the claimants show-

ing title thereto as between themselves, and offered to bring the sum owing into court; and had the defendants, rival claimants to that fund, then set up their respective claims thereto—the court would have been called upon to decide a controversy between the rival claimants, Kurchhoff on the one hand, and Smith on the other, and to decide which of the two was entitled to that sum of money, or that debt conceded by Mosier & Summers to be owing by them to the one or the other, they being unable to decide which. In that case a cause of action would have been made out by Mosier & Summers, and the complaint could not have been dismissed. Crane v. McDonald, 118 N. Y. 648, 23 N. E. 991. It is no defense as against the plaintiffs in an action of interpleader to show that one of the claimants has no title to the money or debt in controversy. That is the very question to be decided, viz., where there is a sum of money or a debt conceded to be due and two persons claim it, which of the two owns or is entitled to it? This form of action necessarily implies that one is and the other is not. The plaintiff makes his case when he shows such a fund or debt, two claimants, and that he cannot safely decide which one is entitled to it. Crane v. McDonald, supra. The issue would have been between Smith and Kurchhoff. If Smith could show that the money or debt was owing to him from Mosier & Summers, and not to Kurchhoff, he would recover a judgment that the money be paid to him. If Kurchhoff could show that the money was due and owing to him from Mosier & Summers by virtue of the assignment, and not to Smith, he would recover a judgment that the money be paid to him. Such a judgment would determine the rights of the claimants to the money or debt, and the duty of the plaintiffs in respect thereto. As Mosier & Summers had not paid Smith for the materials furnished by him, and denied their liability to do so, they could not assert, nor could Smith, that Mosier & Summers did not actually owe to Kurchhoff the balance for the work and labor done and the materials furnished by Kurchhoff to them. Smith had no shadow of claim to any sum that Mosier & Summers owed Kurchhoff. It had not been assigned to him, and the fact that he had furnished the materials to Kurchhoff on credit, the value of which made up that claim, gave him no lien thereon and no right of subrogation. Smith's claim was on the bond and under the statute, and against Mosier & Summers. If the court in that action had found that Smith did have a just and legal claim of $642.08 against Mosier & Summers on the bond, and that they were liable to him thereon in that sum, how would it have helped Smith? The court could not have given judgment therefor; neither could it have declared a lien on the sum due or claimed to be due and owing Kurchhoff; nor could it have directed the money paid to Smith; nor could it, in that action of interpleader, have declared an offset, legal or equitable, and thereby have defeated Kurchhoff. Mosier & Summers were liable to Julius L. Kurchhoff for about $500 for work, etc., done by him for the subcontractor, Max L., in case he was not paid. They were liable to Julius L. in the like sum on the assigned claim of Max L. which he had taken in payment of the demand first mentioned. This demand was liable to be extinguished in case Mosier & Summers

paid Smith $642.08 which Max L. owed Smith, but for this sum Mosier & Summers were liable in any event.

If Mosier & Summers had paid Smith and defeated the recovery of Julius L. on the assigned claim, they would have been liable to Julius L. for his work and labor performed for Max L., some $500, and would have been out the $642.08. If the court had directed the application of the money owing on the Max L. claim to the Smith claim, there would have been the balance due Smith and the claim of Julius L. for work, etc., still due them respectively from Mosier & Summers. It is seen that if the court had attempted to adjust matters by making and enforcing equitable offsets, it would not have bettered matters, but would have "made confusion worse confounded."

It was entirely immaterial to the proper disposition of that case how or what the court held on the question of the liability of Mosier & Summers and the surety company to Smith on the bond. So far as the actual issues in that case were concerned, that was an academic question. That action of interpleader was dismissed, and properly so, on the ground that the plaintiffs could not maintain it. The decree or judgment entered in that case, aside from the recitals, is as follows:

"Ordered and decreed, that the said defendant Julius L. Kurchhoff is entitled to recover from the plaintiffs the amount that may be found due and owing by them by virtue of the contracts made by the plaintiffs with the defendant Max L. Kurchhoff, Jr., and for the extra work and materials performed and furnished by said Max L. Kurchhoff, Jr., for and to the plaintiffs, by virtue of the assignment of said claims from said defendant Max L. Kurchhoff, Jr., to the said defendant Julius L. Kurchhoff, mentioned in the said complaint and answers herein, and that he recover such amount, as aforesaid, to the exclusion of the said defendant F. Lewis Smith, and that the said defendant F. Lewis Smith has no claim upon said amount, or any part thereof, by virtue of the contract and bond of the plaintiffs with the United States government, mentioned in said complaint or answers, or otherwise; and

"It is further ordered and decreed that the plaintiffs are not entitled to maintain this action, and that their complaint must be dismissed, and that the defendant Julius L. Kurchhoff be, and he hereby is, permitted to proceed in his action pending in the Municipal Court of Buffalo against the plaintiffs to recover the amount due and owing him upon his aforesaid claims."

There is no judgment or decree that Smith did not have a just, legal, and enforceable demand against Mosier & Summers, or against Mosier & Summers and the surety company, on the bond under the United States statute for $642.08, the value of the materials furnished by him to the subcontractor, Kurchhoff, and put into the buildings. It is true that the learned judge who decided the case stated in his opinion filed in deciding the case that Smith had no claim on the bond under the statute against Mosier & Summers, and in his conclusions of law held that Smith had no claim on or right to the money due and owing from Mosier & Summers to Kurchhoff. The opinion was clearly wrong under the decision of the Supreme Court of the United States in United States, for the Use of Hill, v. American Surety Company, supra, if it was intended to say that a person who furnishes material to a subcontractor, which goes into a government building, and who has not been paid therefor, has no claim against the contractor and his surety on the bond given pursuant to the statute referred to.

However, the conclusion of law was clearly right. It is also true that the court in dismissing the complaint held as stated, and that an unjustified provision was written into the decree signed by the clerk giving to the defendant Kurchhoff certain relief; but there is nothing in the conclusions of law, or in the judgment or decree entered, to the effect that Smith had and has no right of action or right of recovery on the bond against the defendants here. It is a judgment that he had no right to the money due and owing from Mosier & Summers to Kurchhoff. The decision of that question did not necessarily or properly involve the question at issue here. The question was, Did the fact that Smith had furnished materials to Kurchhoff, the subcontractor, which went into the buildings, entitle him, as against Kurchhoff, or his assignee for value, to have paid to him the sum which Mosier & Summers had agreed to pay Kurchhoff for the labor and materials he put in the buildings, and which included the materials furnished by Smith? The law applicable in actions of interpleader seems to be well settled. They may be divided into two classes, actions of strict interpleader, and actions in the nature of interpleader. The distinction is that in actions of strict interpleader legal rights only are enforced, while in actions in the nature of interpleader equitable relief is sometimes given if a proper case is made. New England Mutual Life Ins. Co. v. Odell, 50 Hun, 279, 280, 2 N. Y. Supp. 873; City Bank v. Bangs, 2 Paige (N. Y.) 570. The purpose of an action of interpleader is to permit a party who holds a fund or property, or who owes a debt, to which two or more persons make claim, and it is uncertain to which claimant the fund or debt belongs, to commence an action against such claimants for the purpose of having it determined between them to which the fund, property, or debt owing belongs, so that it may be paid accordingly, and the holder of the fund, or the debtor, as the case may be, relieved from the danger of a double liability for the same demand. Crane v. McDonald, 118 N. Y. 648, 654, 23 N. E. 991; Bassett v. Leslie, 123 N. Y. 396, 399, 25 N. E. 386; B. & O. R. R. Co. v. Arthur, 90 N. Y. 234, 237; Dorn v. Fox, 61 N. Y. 264; 23 Cyc. 3, 4; Hoggart v. Cutts, Cr. & Ph. 197, 204, 10 L. J. Ch. 314, 18 Eng. Ch. 197; Wing v. Spaulding, 64 Vt. 83, 86, 23 Atl. 615; Wells Fargo & Co. v. Miner et al. (C. C.) 25 Fed. 533, 537; Clark v. Smith, 13 Pet. 203, 10 L. Ed. 123; McWhirter v. Halsted (C. C.) 24 Fed. 828; Louisiana State L. Co. v. Clark (C. C.) 16 Fed. 20.

It is essential to the maintenance of such an action that there be a specific fund or property, or a debt owing, or a duty to be performed, and that the plaintiff in the action of interpleader does not dispute his liability to some one therefor. If it be a fund or a debt owing, the amount thereof as claimed by at least one of the parties must be conceded by the plaintiff (Baltimore & O. R. R. Co. v. Arthur, 90 N. Y. 234); and there must be a reasonable ground of uncertainty as to which claimant is the one entitled thereto, and the plaintiffs, the party owing the debt or holding the fund, must be without adequate remedy at law (Bassett v. Leslie, 123 N. Y. 396, 399, 25 N. E. 386; Morgan v. Fillmore, 18 Abb. Prac. [N. Y.] 217; Trigg v. Hitz, 17 Abb. Prac. [N. Y.] 436; M. & H. R. R. Co. v. Clute, 4 Paige, 384; Crane v. McDonald, 118 N. Y. 648, 23 N. E. 991).

The controversy or dispute must be as to the title or ownership of the particular fund or indebtedness. And an action for interpleader will not lie where the establishment of the plaintiff's liability to the one claimant will not necessarily defeat his liability to the other. Bassett v. Leslie, 57 Hun, 588, 10 N. Y. Supp. 483, affirmed 123 N. Y. 396, 25 N. E. 386. The amount due from the plaintiff cannot be the subject of controversy, and the fact that the sum which the plaintiff is willing to pay is not the sum which the defendants claim is fatal to the action; that is, plaintiff cannot maintain it. City Bank v. Bangs, 2 Paige, 570; New Eng. Mut. Life Ins. Co. v. Odell, 50 Hun, 279, 2 N. Y. Supp. 873; Baltimore & O. R. R. Co. v. Arthur, 90 N. Y. 234.

The plaintiffs in that suit conceded they owed "$263.04 under said contract" with Kurchhoff, "and an additional sum of about $100 on account of extras performed by said Kurchhoff on said buildings" (this is the allegation of the complaint in that suit). This was denied by the defendant Kurchhoff as follows:

"He admits each and every allegation contained .in the fourth paragraph thereof, except the allegation therein, viz., 'that there is a balance owing from the plaintiffs to said defendant Max L. Kurchhoff, Jr., * * * of about $100 on account of extras performed by said Kurchhoff on said buildings,' which he denies, and, on the contrary thereof, alleges that, instead of about said last-mentioned sum being owing from said plaintiffs for such extras performed, there is due and owing from them the sum of two hundred and twenty-one dollars and forty-five cents ($221.45) for extra work and materials performed and furnished and used by the said defendant Max L. Kurchhoff, Jr.. upon, and in and about, the buildings aforesaid, at the special instance and request of the said plaintiffs, in addition to the sum of two hundred and sixty-three dollars and four cents ($263.04) due and owing under said contract, in said paragraph of said complaint mentioned, and as hereinafter stated."

Here was an issue between the plaintiffs and the defendant Kurchhoff which was fatal to the action and demanded the dismissal thereof. Baltimore & O. R. R. Co. v. Arthur et al., 90 N. Y. 234, 237; Bassett v. Leslie, 123 N. Y. 396, 399, 25 N. E. 386; Crane v. McDonald, 118 N. Y. 648, 654, 23 N. E. 991; New Eng. Mut. Life Ins. Co. v. Odell, 50 Hun, 279, 280, 2 N. Y. Supp. 873; Wells Fargo & Co. v. Miner (C. C.) 25 Fed. 533. In Baltimore & Ohio R. R. Co. v. Arthur et al., supra, the plaintiff brought an action of interpleader, alleging that he bought of the defendant Arthur "merchandise of the value of $2,-478.52, less $21.83 to be deducted for freight due for transportation of said merchandise, but were forbidden to pay Arthur by defendant Powers, acting as receiver, who claimed the said purchase price, who threatened to sue therefor, and who did sue for the full amount $2,-478.52." The Court of Appeals said:

"But here the sum admitted to be due is not the sum for which Arthur sues. The plaintiff claims to retain from it an alleged indebtedness for freight. The amount due cannot be the subject of controversy in an interpleader suit, and this difference between the debt claimed by the defendant, and the sum which the plaintiff is willing to pay, presents an insuperable objection to its prosecution; for, as to so much, it does not admit title, or right of payment in either claimant. Sto. Eq. Pl. § 295; 2 Sto. Eq. Jur. § 821."

This is the universal rule in New York and in the federal courts, and generally, in all the states.

So long as there was a dispute as to the amount due from the plaintiffs Mosier & Summers, suppose they had paid the amount into court, or offered so to do, and which plaintiffs must do (Bassett v. Leslie, 123 N. Y. 396, 399, 25 N. E. 386, and cases there cited), what would the court have adjudged as to the money? It could not have gone on and tried the dispute between plaintiffs Mosier & Summers and Kurchhoff as to the amount due and given judgment for a balance not paid in or offered to be paid in, and it could not have restrained Kurchhoff from prosecuting his action in the Municipal Court of Buffalo for the balance claimed, and it could not have dismissed Kurchhoff with partial payment. As was said in Baltimore & Ohio R. R. Co. v. Arthur, supra:

"A debtor cannot, in this summary manner, discharge a creditor with partial payment, or prevent him from enjoying the fruits of his bargain."

But suppose there had been no dispute as to the amount due and it had been paid into court, what would the court by its judgment have done with the money? Could it have adjusted the equities between Mosier & Summers, the plaintiffs, and the Kurchhoffs, the defendant and his assignor, and said to Kurchhoff, "If you pay Smith what is due him for materials, as your assignor ought to do, and thus relieve Mosier & Summers from liability to Smith, the court will give you this money?" This would have left Julius L. to enforce his claim on the bond for the balance due him, and what would his right of recovery have been? If Julius L. had not paid Smith, and the court had given the sum plaintiffs said was owing, or some other sum, we know not what, to Smith, he would have been compelled to take part payment, thus splitting up his demand, and Julius L. would or could have proceeded under the bond—as could Smith—for the balance due him. In short, the court would have been undertaking to adjust equities between all the parties, and would have done full justice by no one of them. But the court could not undertake to do any of the things suggested. Bassett et al. v. Leslie, supra, and other cases cited. In Bassett v. Leslie, the court said:

"This, under the old chancery practice, would have been called a strict bill of interpleader, and to maintain such an action it is necessary to allege and show that two or more persons have preferred a claim against the plaintiff; that they claim the same thing, whether a debt or a duty; that the plaintiff has no beneficial interest in anything claimed; and that it cannot be determined without hazard to himself to which of the two defendants the money or thing belongs. There must also be an offer to bring the money or thing into court. M. & H. R. R. Co. v. Clute, 4 Paige, 384; Dorn v. Fox, 61 N. Y. 268; B. & O. R. R. Co. v. Arthur, 90 N. Y. 234. Such an action always supposes that the plaintiff is a mere stakeholder for one or the other of the defendants who claim the stake, and the case must be such that he can pay or deposit the money or property into court, and be absolutely discharged from all liability to either of the defendants, and thus pass utterly out of the controversy, leaving that to proceed between the several claimants; and an action of interpleader cannot be sustained where, from the complaint itself, it appears that one of the claimants is clearly entitled to the debt or thing claimed, to the exclusion of the other. M. & H. R. R. Co. v. Clute, supra."

But the court having held that the plaintiffs could not maintain the action, and having adjudged that the complaint be dismissed, and it having been dismissed, there could be no other judgment and no adjudication as between the plaintiffs and Smith that he had no claim against them and the surety company on the bond under the statute for the materials furnished. The right of the plaintiffs to maintain their action of interpleader did not depend on Smith's having or not having a valid claim against them, or even on his having a claim against the fund, but on whether or not he made one under such circumstances as to justify the plaintiffs in coming into court. The court decided the contending claims did not justify their bringing the action.

What was the remedy of Mosier & Summers? They could easily have defeated the demand of Julius L. on the claim assigned to him by Max L. Max L. was a subcontractor of Mosier & Summers, and contracted and agreed to paint the buildings and furnish the materials, and by implication to pay for them. He fully performed in all particulars, except that of paying Smith, who furnished him the materials. By the terms of the statute Mosier & Summers thereupon became liable to Smith for the value of such materials. To save themselves from double payment therefor, once to Smith and once to Kurchhoff under their agreement with him, they must pay Smith and then defend against the Kurchhoff claim on the ground of failure of consideration, or by offsetting or counterclaiming the amount they had paid Smith. When A., having contractual relations with B., by the wrong or default of B. becomes liable to pay, and to save himself is compelled to pay, a debt owing by B. to a third person arising out of such contractual relations, B. becomes indebted to A. for the sum so paid. A request from B. to A. to pay is not necessary. The law in such case implies a promise and undertaking on the part of B. to repay A. 27 Cyc. 834, and cases cited; Irvine v. Angus, 93 Fed. 629, 633, 35 C. C. A. 501. In 27 Cyc. 834, the general rule is stated thus:

"Although no assumpsit will be raised by the mere voluntary payment of the debt of another person, yet if one person, in order to protect his own interests, pays a debt for which another is legally and personally liable, the law will imply an assumpsit on the part of the latter to the former. A request will be implied where the consideration consists in plaintiff's having been compelled to do that to which defendant was legally compellable."

In Irvine v. Angus, supra, the court said:

"But neither a previous request to pay nor a subsequent promise to reimburse need be proved to warrant a recovery in an action like this, when it is shown that the plaintiff was, for the protection of his own property, or the preservation of a lien held by him on property, compelled to pay what the defendant himself ought to have paid. The payment under such circumstances will not be deemed to have been officiously made, nor will the plaintiff be looked upon as a mere volunteer or intermeddler in matters in which he has no interest or concern."

The dismissal of the complaint was an adjudication by the court that the plaintiffs had no cause of action, not that the defendant Smith did not have one on the bond under the statute.

Coming to the question of former or prior adjudication, the following propositions are settled law:

1. The former adjudication must have been between the same parties or their privies. Williams v. Barkley, 165 N. Y. 48, 54.

2. The prior action must have been for the same cause, or for a cause which necessarily involved the trial and determination of the same question at issue in the second action, and the prior action must have been heard and decided on the merits. It must also appear that the former decision could not have been made without deciding the particular matter in controversy in the second action. Williams v. Barkley, 165 N. Y. 48, 54, 58 N. E. 765; Earle v. Earle, 173 N. Y. 480, 487, 66 N. E. 398; Shaw v. Broadbent, 129 N. Y. 114, 123, 29 N. E. 238; Converse v. Sickles, 146 N. Y. 200, 208, 40 N. E. 777, 48 Am. St. Rep. 790; Genet v. Del. & H. C. Co., 163 N. Y. 173, 57 N. E. 297; Same v. Same, 170 N. Y. 278, 63 N. E. 350.

3. However, if the judgment or decree in express terms purports to affirm a particular fact or rule or conclusion of law, yet if such fact, or rule, or conclusion of law was immaterial to the issue and the controversy did not turn upon it, such judgment or decree will not conclude the parties to it. Stokes v. Foote, 172 N. Y. 327, 341, 65 N. E. 176; People ex rel. Reilly v. Johnson, 38 N. Y. 63, 97 Am. Dec. 770; Rudd v. Cornell, 171 N. Y. 115, 128, 63 N. E. 828; House v. Lockwood, 137 N. Y. 259, 268, 33 N. E. 595; Stannard v. Hubbell, 123 N. Y. 520, 25 N. E. 1084.

4. It is also conclusive of the matters necessarily comprehended and involved in the prior action, although not litigated, provided the main issue was litigated. Pray v. Hegeman, 98 N. Y. 351; Honsinger v. Union Carriage & Gear Co., 175 N. Y. 229, 230, 67 N. E. 436. What this means and includes, see Earle v. Earle, 173 N. Y. 487, 66 N. E. 398. But if the matter in dispute was different, then this rule has no application. Last Chance M. Co. v. Tyler M. Co., 157 U. S. 683, 15 Sup. Ct. 733, 39 L. Ed. 859; Nesbitt v. Ind. Dist., 144 U. S. 610, 12 Sup. Ct. 746, 36 L. Ed. 562.

5. But a counterclaim, or an offset, even when pleaded in a former action, but no evidence is given to sustain it and it is not tried and adjudicated, is not barred or concluded by such former action. In short, the prior judgment does not determine or preclude a subsequent action on an affirmative cause of action existing in favor of the defendant against the plaintiff recovering judgment in the prior action. Honsinger v. Union Carriage & Gear Co., 175 N. Y. 229, 230, 67 N. E. 436.

6. A prior judgment is not binding or conclusive in a subsequent action as to matters of fact or questions of law which were immaterial or unessential to the determination of the real issue in the prior action, even if put in issue, tried, and decided in such prior action. Their determination must have been pertinent and necessary to the determination of the real issue in such prior action. House v. Lockwood, 137 N. Y. 259, 268, 33 N. E. 595; Stannard v. Hubbell, 123 N. Y. 520, 25 N. E. 1084—cited and approved in Rudd v. Cornell, 171 N. Y. 128, 63 N. E. 823.

7. The judgment rendered in the state court is to be given the same force and effect as a bar or an estoppel in the United States courts as

is given to it in the courts of the state where rendered, no more and no less. Covington v. Covington First Nat. Bank, 198 U. S. 100, 25 Sup. Ct. 562, 49 L. Ed. 963; Union & P. Bank v. Memphis, 189 U. S. 71, 23 Sup. Ct. 604, 47 L. Ed. 712; Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. This is so even if a different rule as to res adjudicata would be applied in the federal courts as to prior judgment rendered therein. Covington v. Covington First Nat. Bank, supra. In other words, the decisions of the highest court of the state in which the judgment was rendered control. It follows that the cases cited, decided by the highest court of the state of New York, apply here and are decisive.

8. It was incumbent on the defendants here in setting up the prior judgment as a bar to this action to allege and prove that the particular point or question as to which they claim the estoppel was necessarily in issue and necessarily decided in such prior action, and was necessarily involved and decided in determining the real issue in such prior action. Russell v. Place, 94 U. S. 606, 608, 24 L. Ed. 214; Soderberg v. Armstrong (C. C.) 116 Fed. 711, and cases cited; 23 Cyc. 1536, 1537, and numerous cases there cited. This has not been done.

In Rudd v. Cornell, 171 N. Y. 128, 63 N. E. 828, the court said:

"A judgment is conclusive upon the parties only in respect to the grounds covered by it and the facts necessary to uphold it; and although a decree, in express terms, professes to affirm a particular fact, yet, if that fact was immaterial to the issue and the controversy did not turn upon it, the decree will not conclude the parties in reference to such fact. People ex rel. Reilly v. Johnson, 38 N. Y. 63, 97 Am. Dec. 770. A judgment does not operate as an estoppel in a subsequent action between the parties as to immaterial and unessential facts, even though put in issue by the pleadings and directly decided. It is final only as to such facts as are litigated and decided, which have such a relation to the issue that their determination was necessary to the determination of that issue. House v. Lockwood, 137 N. Y. 259, 268, 33 N. E. 595; Stannard v. Hubbell, 123 N. Y. 520, 25 N. E. 1084. 'In order that a judgment should have the effect claimed, it is not enough that the party produce a record showing a judicial determination of the same question litigated in his favor, but it must also appear that it was rendered upon the merits, upon a material point, and substantially upon the same facts presented in the subsequent case.' Shaw v. Broadbent, 129 N. Y. 114, 123, 29 N. E. 238; Converse v. Sickles, 146 N. Y. 200, 208, 40 N. E. 777, 48 Am. St. Rep. 790; Genet v. Del. & Hud. Canal Co., 163 N. Y. 173, 57 N. E. 297; Same v. Same, 170 N. Y. 278, 63 N. E. 350."

Turning to the answer of the defendants Mosier & Summers in this action, we find the following as the former adjudication relied on: In the first defense they allege that while Max L. Kurchhoff was doing the work and furnishing the materials on the buildings referred to, and which was the basis of his claim assigned to Julius L., the plaintiff furnished certain materials to said Kurchhoff at his request and without the authorization of the defendants, the amount being to the defendants unknown. Then, as a second defense, they allege the entry of the prior judgment, and say "wherein and whereby, among other things, it was found" that Julius L. Kurchhoff, as assignee of Max L.—

"was entitled to recover from the plaintiffs in that action, who are these defendants, Mosier & Summers, the amount that might be found due and owing by them by virtue of the contract made between Mosier & Summers and

the defendant Max L. Kurchhoff, Jr., as above stated, and for extra work and materials furnished by said Max L. Kurchhoff, Jr., to the exclusion of F. Lewis Smith, one of the defendants in that action, and that said Smith had no claim thereon nor any part thereof by virtue of the contract, bond, and statute referred to in the plaintiff's complaint herein."

This is the only prior adjudication set up or pleaded, and it is seen that it is not alleged or claimed that the question of the liability of Mosier & Summers to Smith for the value of such materials furnished by him to Kurchhoff, under said bond and statute, was necessarily involved or decided in that prior action, as indeed it was not. I give the answer no broader effect as a prior adjudication than is claimed for it in the answer. It is not in fact entitled to that, as the complaint was dismissed. Turning to the judgment roll in that action, we find that the question at issue was, as before stated, not the liability of Mosier & Summers to Smith on the bond for the $642.08, but the right of Smith to the money due on a debt owing by Mosier & Summers to Kurchhoff for work and materials, for the reason Smith had furnished Kurchhoff the materials that in part made up that claim. The judgment correctly declares that Smith was not entitled thereto, although the complaint was dismissed on the ground that as Julius L. claimed an amount in excess of what the plaintiffs admitted to be due, so that the plaintiffs could not drop out of the controversy, the action could not be maintained. The court said, when it came to decide the case and announce the ground of its decision:

"'Such an action,' say the court in Bassett v. Leslie, 123 N. Y. 396, 399, 25 N. E. 386, 'always supposes that the plaintiff is a mere stakeholder for one or the other of the defendants who claim the stake, and the case must be such that he can pay or deposit the money or property into court, and be absolutely discharged from all liability to either of the defendants, and thus pass utterly out of the controversy, leaving that to proceed between the several claimants; and an action of interpleader cannot be sustained where, from the complaint itself, it appears that one of the claimants is clearly entitled to the debt or thing claimed to the exclusion of the other.'

"In the case now before us the defendant Julius L. Kurchhoff claims an amount in excess of that which the plaintiffs admit to be due, so that they cannot drop out of the controversy, except as to an amount which they name, and it is clear from the complaint that the plaintiffs owe to Kurchhoff the amount which they admit to be due, to the exclusion of the defendant Smith, who has no legal claim against the plaintiffs. Under such circumstances an action in interpleader would operate to do an injustice to the defendant Kurchhoff, and it should not be permitted.

"The complaint should be dismissed, with costs, and the Municipal Court action should be permitted to proceed."

This was the decision of the court and the ground of its decision, as the judgment roll and opinion conclusively show. True, the judge had discussed other propositions, and in his opinion in such discussion, unconsciously of course, disagreed with and overruled the Supreme Court of the United States in United States, for the Use of Hill, v. American Surety Company, 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437, decided January 2, 1906, about a year prior to the judgment in the action pleaded as a bar here, and before it was brought, but did not decide the case on any such ground, or direct or authorize judgment other than a dismissal. Said the Court of Appeals in Stokes v. Foote, 172 N. Y. 327, 341, 342, 65 N. E. 176, 181:

"It is well settled, however, that 'although a decree in express terms purports to affirm a particular fact, or rule of law, yet if such fact or rule of law was immaterial to the issue, and the controversy did not turn upon it, the decree will not conclude the parties thereto.' Woodgate v. Fleet, 44 N. Y. 1, 13; Stannard v. Hubbell, 123 N. Y. 520, 25 N. E. 1084; House v. Lockwood, 137 N. Y. 259, 33 N. E. 595; Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464; Packet Co. v. Sickels, 5 Wall. 592, 18 L. Ed. 550; Jackson v. Wood, 3 Wend. (N. Y.) 37, and Wood v. Jackson, 8 Wend. 10, 22 Am. Dec. 603; Sweet v. Tuttle, 14 N. Y. 465; Campbell v. Consalus, 25 N. Y. 613; People ex rel. Reilly v. Johnson, 38 N. Y. 63, 97 Am. Dec. 770; Hymes v. Estey, 116 N. Y. 501, 509, 22 N. E. 1087, 15 Am. St. Rep. 421; Lorillard v. Clyde, 122 N. Y. 41, 25 N. E. 292, 19 Am. St. Rep. 470; Bigelow on Estoppel, 152; Duchess of Kingston's Case, Everest & Strode, 410. Lord Chief Justice De Gray said in the case last cited: 'That neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, though within the jurisdiction, or of any matter incidentally cognizable, or of any matter to be inferred by argument from the judgment.' "

It is clear that the plaintiff's attorneys in that case, in view of the decision referred to, and without authority of law, attempted to inject into the judgment entered something that would operate as a bar to Smith's recovery in a proper action, but in this, giving full effect to all that is found therein, they failed. It is settled that when the complaint is dismissed there can be no adjudication between the defendants. "So where the plaintiff fails to sustain his complaint, the court cannot grant relief as between codefendants." 3 New York Practice, Nichols, 2761; Martin v. Wagener, 1 Thomp. & C. (N. Y.) 509; Hall v. Ditson, 5 Abb. N. C. (N. Y.) 198; Dusenbury v. Fisher, 47 N. Y. Super. Ct. (15 Jones & S.) 482. The whole record in that case is to be looked to in determining what was necessarily at issue and decided by the court, and the opinion is in evidence with the judgment roll, as is the contract between Mosier & Summers and the United States, the renewals thereof, and the bond, all certified and furnished by the United States pursuant to the statute.

It follows that the plaintiff, F. Lewis Smith, is entitled to recover of the defendants the sum of $642.08, with interest thereon from August 1, 1905, with costs. There will be a judgment accordingly.